### FENELON ARNOLD ET AL. *v.* JOHN V. FARR ET AL.

*Deed. Construction. Use as Limiting Grant.*

1. A deed of "two undivided ninth parts of the aqueduct and spring of water, with full liberty to conduct said portion of water from said premises," conveys, not the right to take so much water from the aqueduct, but such a portion of the spring, with the privilege of taking the water by other means than the aqueduct.

2. The fact that the grantors under such a deed have always taken their portion of the water from the aqueduct does not so limit the grant.

This was a bill in chancery setting forth that the orators were the owners of a spring with the right to take the water therefrom ; that the water was conducted therefrom in an aqueduct ; that the defendant Farr had acquired by deed the right to take from said aqueduct one-sixth part of the water flowing in it ; that he claimed under said deed one-sixth part of the water in the spring, and was about to put down an independent pipe for the purpose of conducting the water to his buildings, which would render it impossible to equally distribute the water flowing from the spring and give to the said defendant more than his just share ; praying that the court would enjoin the said defendant from laying such independent pipe, and make such order in the premises as might be just as to the distribution of the water. The defendant Farr made answer, setting up that he was the owner of one-sixth part of the spring with the right to take the water therefrom in whatsoever manner he was fit ; and that under the present system of distribution he did not and could not obtain his just share.

The case was referred to a special master, from whose report it appears that the defendant Farr derived title to the spring from one C. O. Brigham, who took his title to the same under a quit-claim deed from DeWolfe, Fenelon Arnold and John Phelps, through whom the orators now claim. The deed to Brigham was dated Oct. 26, 1858, and contained this description :

"One undivided sixth part of a certain spring and the aqueduct which conveys the water therefrom to the dwelling houses of the said DeWolfe, Arnold and Phelps, with full liberty to take said portion of the water running in said aqueduct from such point in said aqueduct as shall be most convenient, and conduct the same to his premises; the said Brigham to be at one-fourth the expense of the repairing and maintaining said aqueduct, and the said Brigham to have the privilege of entering upon any part of the premises through which said aqueduct runs, for the purpose of relaying or repairing said aqueduct."

The deed from Brigham to the defendant was executed February 9, 1863, with this description :

"One undivided sixth part of a certain spring and the aqueduct which conveys the water therefrom to the dwelling house of the said Calvin O. Brigham, with full liberty to take said portion of the water running in said aqueduct from any portion of said aqueduct as shall be most convenient, and conduct the same to said premises ; the said Farr to be at one-fourth part of the expense of repairing and maintaining said aqueduct, and the said Farr is to have the privilege of entering upon any part of the premises through which such aqueduct runs, for the purpose of relaying or repairing said aqueduct."

It further appeared that Brigham, upon receiving his deed as above, had put in the branch from the aqueduct to the defendant's premises, and that the defendant's one-sixth had been taken in this way ever since, and the master found :

"In my opinion there is no practicable way for Mr. Farr to draw his one-sixth from the spring by a separate pipe, even if

he has that right, and be reasonably sure of getting his one-sixth and no more."

The case was heard at the September Term, 1888, upon the pleadings and master's report. Veazey, Chancellor, dismissed the bill with costs. The orators appeal.

*L. M. Read* and *C. B. & C. F. Eddy*, for the orators.

Brigham could convey no greater title than he had. It was the manifest intention of Brigham's grantors to convey to him simply the right to take so much water from the aqueduct. The practical construction given to a deed by the subsequent acts of the parties, *may* be resorted to in ascertaining their intention. Angell on Water Courses, s. 363; *Dryden* v. *Jepherson*, 18 Pick. 385; *Makepeace* v. *Bancroft*, 12 Mass. 469; *Davis and others* v. *Rainsford*, 17 Mass. 211; *Allen* v. *Bates and others.* 6 Pick. 460; *Cambridge* v. *Lexington*, 17 Pick. 230; *Stephenson* v. *Erskine*, 99 Mass. 367-375; *Lovejoy* v. *Lovett*, 124 Mass. 270; *Flagg, Admr.* v. *Eames and others*, 40 Vt. 22; *Robinson* v. *Railroad Co.*, 59 Vt. 432; *Woodcock & Vinton* v. *Estey*, 43 Vt. 515; *Robinson* v. *Railroad Co.*, 59 Vt. 426.

The defendant and his grantor have never entered into the enjoyment of the right now claimed, but have neglected to do so for a period of 28 years. It is too late to assert it now. *Smith* v. *Langewald*, 140 Mass. 205; Angell on Water Courses, s. 252 b.

The master reports that there is no practical way in which the defendant can draw his one-sixth from the spring by an independent pipe. The court should therefore make some order as to the method of distribution.

*Haskins & Stoddard*, for the defendant.

Under his deed the defendant derives title to one-sixth part of the spring and may take the water in such manner as he pleases. *Ashley* v. *Pease*, 18 Pick. 275; *Goodrich* v. *Burbank*, 94 Mass. 459; *French* v. *Morris*, 101 Mass. 68; *Owen* v. *Field*, 102 Mass. 90; *Rogers et al.* v. *Bancroft et al.*, 20 Vt. 251; *Adams* v. *Warren*, 23 Vt. 395; *Rood* v. *Johnson*, 26 Vt. 64; Angell on Water Courses, s. 149 e.

Arnold et al *v.* Farr et al.

The opinion of the court was delivered by

TYLER, J. The main question in this case is whether the deed from Brigham to defendant Farr conveyed an absolute title to an undivided sixth part of the spring or a right only to take that portion of the water from some convenient point in the aqueduct.

The orator's counsel claim in their brief that the only right Brigham's grantors had was an undivided part of the water of the spring *to be taken through the aqueduct,* and that they could convey no greater interest than they owned; that Brigham, during the time that he held title, and the defendant thereafter until October, 1886, placed this construction upon the grant by taking their share of water from the aqueduct, and that their construction of it is the measure of the defendant's right.

Referring to the partition of the real estate of Arnold, there can be no question but that his heirs thereby acquired absolute title to the spring and aqueduct. The deed from DeWolfe to the orator Arnold did not convey the use of the water nor a mere right to draw it, but "two undivided ninth parts of the aqueduct and spring of water now running to the dwelling house owned and occupied by said DeWolfe, with full liberty to conduct said portion of water from said premises." * * The same language is used in the deed from DeWolfe to Stoddard and in that of the latter to Phelps. Then DeWolfe, Arnold and Phelps, each owned two undivided ninths of the spring and aqueduct and conveyed a one-sixth interest therein to Brigham, whose deed to Farr contains substantially the same description. Farr, therefore, acquired a good title to an undivided sixth part of the spring and aqueduct with a privilege of taking that portion of the water from such point in the aqueduct as should be most convenient.

Is the defendant limited to the particular means mentioned in the deed of taking his share of the water to his premises? When a deed is of doubtful meaning, the manner in which the parties holding under it have for a long period of time treated the thing granted, aids in giving it a practical construction. This is the import of the Massachusetts cases cited upon the orator's brief.

Arnold et al *v.* Farr et al.

In *Dryden* v. *Jepherson*, 18 Pick. 385, there was a conveyance of a mill privilege described by metes and bounds with a privilege of a dam which was not definitely located. It was held that evidence of what the parties did immediately after the grant by way of marking out the site and height of the dam to be erected was competent for the purpose of determining the extent of the grant. So if a deed of land refer to a monument not then erected and the parties afterwards erect it intending to conform to the deed, the monument so placed will govern the extent of land though not entirely coinciding with the line described in the deed. *Makepeace* v. *Bancroft*, 12 Mass. 469. It is familiar law that where the boundary line between adjoining lands is uncertain, that which the respective owners have long acquiesced in becomes the line of division. So where the identity of land conveyed is in dispute, the acts of the parties in relation thereto may be shown in evidence. *Allen* v. *Bates*, 6 Pick. 460.

But in this case there is no uncertainty in the deed. The extent of the grant is clearly defined, and the fact that the defendant and his grantor for many years drew their share from the stone aqueduct is not conclusive against defendant's right to take it directly from the spring by another aqueduct unless the words in the deed clearly or by necessary implication limit him to the former means, and we hold that they do not.

This is in accordance with the reasoning of the court in *Adams* v. *Warren*, 23 Vt. 395, and *Rood* v. *Johnson*, 26 Vt. 64.

The defendant has not drawn nor threatened to draw more than his share of the water, and though the master reports that there is no practicable way for the defendant to draw his one-sixth part by a separate pipe and be reasonably sure of getting his share and no more, we think that the orator's rights are not so imperiled by the defendant's proposed means of taking his share as to warrant the intervention of the Court of Chancery by its injunction or by an order for a division of the water according to the prayer of the bill.

*The cause is remanded with mandate that the decree of the Chancellor dismissing the orator's bill of complaint be affirmed with costs.*