CHARLES R. ORD *v.* MARY A. TERRY AND WILLIAM TERRY.

February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 8, 1917.

*Deeds — Appurtenances — Easements — Invasion — Burden of Proof—Findings of Fact—Exceptions to Findings—Exceptions not Briefed.*

The grantee in a deed conveying certain premises "with all the privileges and appurtenances thereof" takes as an appurtenance to the land conveyed a right to the flow of water to the premises through a pipe, existing before and at the time of the conveyance.

The substitution by defendants of a different appliance from that previously in use in a certain pipe line, for the purpose of taking water therefrom for defendants' use does not, as matter of law, constitute an invasion of plaintiff's easement also to take water therefrom acquired by a deed from defendants while the previous appliance was in use; for the appliance in use when the deed was given to plaintiff is not itself the defendants' right, but the measure of it, and a change in its character is to be deemed merely an incident to their right unless it interferes with the right of the plaintiff.

The burden of showing an invasion of the right of the plaintiff to take water from a certain pipe line, alleged in the bill of complaint, is upon the plaintiff.

No error can be imputed to the failure of a special master to find in accordance with the requests of a party, when there is evidence having a contrary tendency, or where the legitimate inferences from the evidence are conflicting.

Where the master found the size of an opening in an obstruction in a water pipe, on defendants' premises, through which opening the plaintiff took his water, it is of no consequence that he made no finding as to the material composing the obstruction.

Exceptions not briefed by the exceptor are waived.

BILL IN EQUITY brought to restrain an alleged interference with plaintiff's water supply. Heard in vacation after the

June Term, 1915, Orange County, upon bill, answer, replication, master's report, and plaintiff's exceptions thereto, *Miles,* Chancellor.   Decree, overruling the plaintiff's exceptions, dismissing the bill, and dissolving the temporary injunction previously obtained by the plaintiff, with costs.   Plaintiff appealed.

The master reported that the plaintiff owned and occupied a house and barn in the town of Newbury, adjoining the house owned and occupied by the defendants, who were husband and wife.   The defendants' house was distant about thirty feet easterly from and eight feet higher than that of the plaintiff. The defendants owned a barn, built in 1904, and known as the "new barn," about ten rods easterly from their house.   Forty or fifty rods easterly from defendants' house, and standing upon land twenty or thirty feet higher, were the house and barn of one Courtney.   All these premises were supplied with water from a spring on defendants' land, situated fifty or sixty feet easterly of Courtney's premises and one hundred to one hundred and twenty-five feet above plaintiff's premises.   The water was conveyed from the spring through a lead pipe, one-half inch in diameter, first to Courtney's house, where the pipe was tapped to supply his premises, next to the "new barn" of defendants, where the pipe was again tapped, then to defendants' house, where it was again tapped, and lastly, to plaintiff's house, to furnish a water supply there.   During the greater part of the year the spring furnished sufficient water amply to supply all of the above premises, but at times the flow diminished, and, at one time, nearly failed.

The plaintiff's premises were originally owned by defendant Mary A. Terry, and the water system above described existed, except as hereafter noted, at the time the plaintiff purchased from her, on October 23, 1899.   The deed from defendant Mary A. Terry to the plaintiff was a warranty deed in common form, and contained no description of, or reference to, the water, but contained, in the habendum, the usual clause "with all the privileges and appurtenances thereof."

At the time the deed was executed, the water flowed through the half inch pipe, into a barrel which was sunk into the ground in a shed adjoining the plaintiff's house.   The end of the pipe was pinched, or compressed, so as to regulate the flow of water, the opening therein being about one-eighth of an inch in diameter. In 1901 the plaintiff finished off the shed into kitchen and

brought the water up into a sink, where it discharged at a point about three feet above the barrel, and the flow was regulated by a faucet. In 1913 the plaintiff installed a tank above the sink and nine or ten feet higher than the point where the water formerly discharged into the barrel, and up to the time of the hearing the water ran into the tank and was drawn for use therefrom.

The defendants' house was, at the time of the deed to the plaintiff, a two tenement house, both tenements being supplied with water from the half inch pipe. After the deed was executed defendants installed a bath room and set tubs in one tenement, added one or two sill cocks, and made an additional opening in the half inch pipe through which water was taken to a faucet to supply drinking water. All of the water used in the defendants' house, except that taken from the drinking faucet, was carried to a tank in the upper story, from which it was drawn for use.

At the time plaintiff purchased, the defendants owned and occupied a barn near the Courtney house, which was then and at all other times supplied with water from the main pipe. In 1904 defendants sold this barn to Courtney and erected the "new barn." Subsequent to the bringing of plaintiff's bill, the "new barn" was cut off from the water system above described, and was supplied with water from another source.

Also, at the time of the conveyance to the plaintiff, there was a coupling in the main water pipe in defendants' cellar, below the point where it was tapped to supply defendants' house, which formed an obstruction to the flow of water, having an opening one-fourth of an inch in diameter, through which the water passed to plaintiff's premises. It was necessary to maintain a check upon the flow of water at this point, because without it all the water would be drawn to the plaintiff's premises, and none would be forced into defendants' tank. In the spring of 1910 the defendants took out the coupling and installed a "Globe Valve," which was a device whereby the flow of water in the main pipe could be regulated at will, or entirely shut off. This was done without the knowledge or consent of the plaintiff.

The master reported that there had always been more or less trouble with the water freezing in winter, and that the supply had been reduced, or cut off, at times by obstacles in the pipe. The main pipe was under ground after leaving defendants'

cellar until it entered plaintiff's hot house, which was built by him after his purchase adjoining his house on the side nearest to defendants' premises. The hot house was not protected from freezing and the pipe laid exposed on the dirt floor and was frequently frozen in winter.

After the installation of the "Globe Valve" the plaintiff frequently complained to defendants of shortage of water, and on all such occasions the defendant, William Terry, opened the valve a little wider except once when he refused to do so because it would prevent water from running into his own tank.

Although the plaintiff had difficulty with his water supply, he did not take up the pipe between his premises and that of defendants to examine it.

The master found that, so far as the evidence showed, the plaintiff's shortage of water might have been due to an obstruction in the pipe after it left defendants' premises, that one principal difficulty with plaintiff's water supply was due to the attempt to carry water to supply three households through a half inch pipe for so great a distance; and stated that he could not find on the evidence that any acts of the defendants had the effect of diminishing the flow of water to which the plaintiff was entitled.

*John W. Gordon* for the plaintiff.

The burden of proof rests upon the servient owner to prove most conclusively his right to interfere with the easement and the dominant estate is not obliged to submit to changes, whether they are injurious or beneficial if they are material changes. It was a material change to put in the "Globe Valve" in the place of the coupling with the quarter inch hole, or make new openings in the main pipe to take water to the new barn, or to make a new opening for a faucet, or to add one or two sill cock openings. *Sebold* v. *Riger*, 26 Col. App. 209; *Holme et al.* v. *Shreve*, 4 N. J. Eq. 116; Jones on Easements, §§ 826, 830; *Nute* v. *Boston Co-op. Bldg. Co.*, 149 Mass. 465; *Kelley* v. *Saltmarsh*, 146 Mass. 585; *Meehan* v. *Barry*, 97 Mass. 447; *Miller* v. *Bristol*, 12 Pick. 550; *Merritt* v. *Parker*, 1 N. J. Eq. 465; *Johnson* v. *Hyde*, 32 N. J. Eq. 455; *Dickenson* v. *Gd. Jct. Canal Co.*, 15 Beav. 260; *Allen* v. *San Jose Land & W. Co.*, 97 Cal. 138; *Gregory* v. *Nel-*

*son,* 41 Cal. 278; *Roberts* v. *Roberts,* 55 N. Y. 271; *Vinton* v. *Greene,* 158 Mass. 426; *Haskett* v. *Shepard,* 85 Mich. 165.

It is not necessary that there should be any actual damage to entitle one to relief for the invasion of the right of an easement. *Collins* v. *St. Peters,* 65 Vt. 618; and cases cited; Washburn on Easements (2 ed.) 559; 2 Washburn on Real Property (3 ed.) 339; *Merritt* v. *Parker,* 1 N. J. Law 460; *Palmer* v. *Mulligan,* 3 Kan. 307; *Suckrider* v. *Beer,* 10 Johns. 241; *Tillotson* v. *Smith,* 32 N. H. 90; *Woodman* v. *Tufts,* 9 N. H. 88; *Cowles* v. *Kidder,* 4 Frost. 379; Angell on Waters, 335; *Miller* v. *Putnam,* 1 Wm. Sanders 346; *Coolidge* v. *Hagar,* 43 Vt. 9; *Jamison* v. *Walker,* 11 Gray 423; *Nichols* v. *Chamberlin,* Cro. Jac. 121; *New Ipswich Factory* v. *Batchelder,* 3 N. H. 190; *Dunklee* v. *Wilton R. R. Co.,* 24 N. H. 489; *Vt. Cen. R. R. Co.* v. *Hills,* 23 Vt. 681; *Chase* v. *Dix,* 46 Vt. 642.

The defendants had no right to change the nature of the obstruction from a coupling to a "Globe Valve," and make additional openings to draw water away, which necessarily would reduce the pressure at the plaintiff's premises and diminish his flow of water. But whether it diminished the amount of water or not is immaterial; the courts have gone very far in prevention of changes. *Winslow* v. *Vallejo,* 148 Cal. 732, 113 Am. St. Rep. 349; *Outbank* v. *L. S. & M. S. R. Co.,* 74 N. J. 194, 27 Am. Rep. 35; *Evangelical, etc., Orphans' Home* v. *Buffalo Hydraulic Ass'n,* 64 N. Y. 561.

The Supreme Court ought to disregard the finding that the flow of water was not diminished by any act of defendants. The installation of the "Globe Valve" and the connection with new barn, faucet and sill cocks would necessarily affect the flow. The court should take judicial notice of this fact. *Brown* v. *Piper,* 91 U. S. 37; *Daggers* v. *Van Dyck,* 37 N. J. Eq. 130; *Morton* v. *Oregon, etc., R. R. Co.,* 48 Oregon 444; *Bryan* v. *Beckley,* 12 Am. Dec. 276.

*Dunnett & Shields* for the defendants.

The master's findings of fact are conclusive if supported by evidence, without regard to its weight. *Howard* v. *Scott,* 50 Vt. 48; *Merriam* v. *Barton et al.,* 14 Vt. 501; *Bigelow* v. *Middletown Cong. Soc'y,* 15 Vt. 370; *Mott* v. *Harrington,* 15 Vt. 197; *Thrall* v. *Chittenden,* 31 Vt. 183; *Vt. & Can. R. R. Co.* v. *Vermont Cent-*

*ral R. R. Co.*, 34 Vt. 1; *McDaniels* v. *Harbour*, 43 Vt. 460; *Rowan* v. *State Bank et als.*, 45 Vt. 160; *In re Merrill*, 54 Vt. 200; *Randall* v. *Randall*, 55 Vt. 214; *Waterman* v. *Buck*, 58 Vt. 519; *Hathaway* v. *Hagan*, 64 Vt. 135.

The burden of proof is upon the plaintiff to show that the defendants' action materially and unreasonably interfered with his water rights. *Arbuckle* v. *Ward*, 29 Vt. 43; Washburn on Easements (3 ed.) 688; *Utah-Idaho Sugar Co.* v. *Stevenson et al.*, 34 Utah 184, 97 Pac. 26.

The defendants were entitled to make any reasonable use of the water on their premises which would not materially or unreasonably interfere with the use of the amount of water to which plaintiff was entitled by his purchase. 14 Cyc. 1208; *Starkie* v. *Richmond*, 155 Mass. 189; *Whittier* v. *Cocheco Mfg. Co.*, 9 N. H. 454, 32 Am. Dec. 382; *Weed* v. *McKay*, 74 N. Y. S. 250, 37 Misc. 105; *Howland* v. *Harder*, 138 N. Y. S. 129, 153 App. Div. 442; *Tacoma Safety Deposit Co.* v. *Chicago*, 247 Ill. 192, 93 N. E. 153; *Thompson* v. *Germania Life Ins. Co.*, 97 Minn. 89, 106 N. W. 102; *Idaho-Utah Sugar Co.* v. *Stevenson et al.*, 34 Utah 184, 97 Pac. 26; *Arnold* v. *Farr*, 61 Vt. 444, 17 Atl. 1004.

HASELTON, J.   This is an injunction suit in chancery. A master was appointed who found and reported facts. On hearing, the court of chancery dismissed the complaint. The plaintiff appealed, and the case is here on his appeal.

The defendants are husband and wife. Prior to October 23, 1899, the defendant Mary A. Terry owned premises, a part of which are now owned by the plaintiff. On the date mentioned the defendants deeded to the plaintiff the premises which he now owns, that have any relation to this case, "with all the privileges and appurtenances thereof." The premises of one Courtney, of the defendants that were not conveyed to the plaintiff and the premises so conveyed were supplied with water from a spring on premises of the defendants not conveyed. The water was carried from the spring through a half inch lead pipe, the premises conveyed to the plaintiff were lower than the others and were the last to be supplied, and by the conveyance to him the plaintiff took, as an appurtenance to the land conveyed to him, a right to the flow of water to his premises in and through the pipe as theretofore.

At the time of the conveyance there was a coupling in the pipe on premises not conveyed, which coupling was for the pur-

pose of the defendants' supply of water, and which obstructed the free flow of water in the pipe, and left an opening of only about one-fourth of an inch, through which water found its way to the premises conveyed, hereinafter called the plaintiff's premises.

The plaintiff claims that the defendants have invaded his right or easement as above set forth. After taking his deed, the plaintiff himself made changes which necessarily affected the pressure and flow of the water where he received it for his uses. He originally received it only through the end of the lead pipe, which was pinched up so as to leave an opening of about one-eighth of an inch only. The pinching of the end of the pipe was to regulate the flow of water at the plaintiff's premises so that too much water would not be drawn from the other premises higher up supplied by this water system, as we may call it. Since the conveyance to him, the plaintiff has substituted, for the pinching of the pipe, a faucet to regulate the flow, and has installed a tank into which the water runs at a point nine or ten feet higher than the original point of discharge. Meantime, in 1910, the defendants substituted a ''Globe Valve'' for the check on their premises that was in use when the deed in question was given, and by means of it have since held back the water to which they were entitled. The plaintiff claims and asserts in his bill that the defendants have held back more water than they were entitled to, that they have interfered with the flow of water to his premises and have invaded his right.

The master reports that the pipe, in a hot-house on the plaintiff's premises, has frequently been frozen in winter and that lizards have frequently come through the pipe and that once a frog in the pipe stopped the water. The master reports that the plaintiff has never taken up the pipe on his premises to examine it for obstructions, and that, so far as the evidence shows, the plaintiff's shortage of water may have been entirely due to an obstruction in that portion of the pipe. The master further says that he cannot find on the evidence that any acts of the defendants have had the effect of diminishing the quantity of water delivered at the plaintiff's premises below that which he was entitled to receive under the conditions existing at the time the plaintiff took his deed.

There is no finding of an invasion of the plaintiff's right by the defendants nor of facts which, as matter of law constitute such an invasion, unless the substitution of the ''Globe Valve''

for the thing that had formerly been in use as a check on the defendants' premises, constituted, in itself, and regardless of its effect and use, an invasion of the plaintiff's right or easement, as matter of law. And the "Globe Valve" did not in itself, as matter of law, constitute an invasion of the plaintiff's easement; for the right to maintain an obstruction to hold back the water to which the defendants were entitled pertained to the right of the defendants rather than to that of the plaintiff and the obstruction in use when the deed was given was not itself the defendants' right, but the measure of it, and a change in the character of the obstruction is to be deemed merely an incident to their right, unless it interfered with the right of the plaintiff. *Arnold* v. *Farr*, 61 Vt. 444, 448, 17 Atl. 1004; *Baker* v. *Frick*, 45 Md. 337, 24 Am. Rep. 506; *Ames* v. *Shaw*, 82 Me. 379, 19 Atl. 856; *Hartman* v. *Fick*, 167 Pa. 18, 31 Atl. 342, 46 Am. St. Rep. 658; *Dyer* v. *Walker*, 99 Wis. 404, 74 N. W. 79.

In view, therefore, of what the master says he is unable to find, and of what, he, in fact, fails to find, the question of the burden of proof here becomes the important one, for if the burden was on the plaintiff to show the invasion of his right that he asserted in his bill of complaint, the decree dismissing the bill must be affirmed, unless error that calls for a reversal inheres in findings to which the plaintiff excepted. And the burden of showing the invasion of his right which he alleged was on the plaintiff. *Rutland Ry., Light & Power Co.* v. *Williams*, 90 Vt. 276, 98 Atl. 85; *Harrison* v. *Northwestern, etc., Ins. Co.*, 80 Vt. 148, 66 Atl. 787; *Collins* v. *St. Peters*, 65 Vt. 618, 27 Atl. 425. In the case last cited the doctrine of the burden of proof is applied to a case like this, for there on page 622 of 65 Vt., on page 426 of 27 Atl., it is said, in the clear language of Judge Thompson, that one having an incorporeal hereditament, like an easement, may maintain an action to vindicate his claim to it "if he can show a violation of his right to enjoy it," although he may not be able to show actual damage. And in *Arbuckle* v. *Ward*, 29 Vt. 43, it appears on page 50 that Judge Poland, who tried the case below, placed the burden of proof in a case much like this distinctly upon the plaintiff or actor, and in this court the charge was approved.

We now consider the plaintiff's exceptions to the findings of the master and to his failure to find as requested in certain respects. The plaintiff made certain requests that related to

times prior to 1910, when the "Globe Valve" was put in by the defendants, and excepted to the non-compliance of the master with these requests in whole or in part. It is not however material to examine the requests and the findings in these regards, since the gist of the complaint and of the argument relates to the substitution, in 1910, of the "Globe Valve" for the obstruction or check existing at the time when the orator took his deed. However, the requests referred to were substantially complied with except in matters as to which the evidence compelled or warranted findings at variance with the requests. We have so far referred particularly to requests one and two.

The plaintiff's third exception was to the failure of the master to comply with a request embodying the proposition that the water never at any time froze except in the cellar of the defendants. But there was testimony tending to negate this proposition, and the master was not in error in refusing to comply with the request containing it.

The plaintiff's fourth exception was to the refusal of the master to find, on the uncontradicted evidence, that the check valve installed in 1910, was a device by which no one could be sure as to the amount of checking produced by turning it, unless it was entirely open or entirely shut. But there was evidence tending to show that experiments would determine that matter to a reasonable certainty, and the master was right in refusing the request.

The fifth exception was to the refusal of the master to comply with a portion of a request to the effect that the "Globe Valve" had been used to diminish the flow of water to the plaintiff's premises below that to which he was entitled under his deed. But the master was not compelled to find as requested, for there was evidence having a contrary tendency.

The sixth and seventh exceptions were to the failure of the master to comply with requests as to which the direct evidence and the legitimate inferences were conflicting, and they therefore raise no question of law.

The eighth exception was to the failure of the master to comply with a request in part immaterial and in part contrary to some of the evidence. It was properly refused.

The ninth and tenth exceptions were to the failure of the master to comply with requests as to freezing on the plaintiff's premises and protection from freezing by the plaintiff. But in

the state of the evidence the plaintiff was not, as matter of law, entitled to have them complied with. The eleventh exception recurs to a matter already considered and disposed of.

The twelfth exception so far as the plaintiff argues it was to the failure of the master to comply with a request that if he found in accordance with the defendants' testimony the obstruction at the coupling on the defendants' premises was a piece of leather with a one-fourth inch opening through it. The master found the size of the opening to be one-fourth of an inch, and it is of no consequence that he made no finding as to the material through which the hole was.

The thirteenth exception was in substance the same as the fourth, and the fourteenth and fifteenth exceptions, so far as they raised any material questions, were in substance like the fifth, which we have sufficiently considered.

The sixteenth exception was to the failure of the master to comply with a request containing the proposition that there was no freezing of the main pipe where it passed through a certain hot-house on the plaintiff's premises. However, there was testimony of such freezing, and the entire request was properly disregarded.

Other exceptions were taken but are not briefed and are therefore waived.

As has been said, one Courtney was another taker of water from the system in question, but no question of law in the case requires further reference to him or to his right or to his use thereof.

*Decree affirmed and case remanded.*