Hillsborough, March 2, 1943. } No. 3368.

JOHN W. McLANE & a. v. SILVER BROTHERS, INC.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the plaintiffs.

*McLane, Davis & Carleton* (*Mr. Robert P. Bingham* orally), for the defendant.

PAGE, J.   Since the defendant has briefed and argued only the exception to the denial of its motion for a directed verdict, all other exceptions will be treated as waived.

Sometime prior to April 1, 1935, James N. McLane died seized of certain real estate in Manchester.   By his will the real estate now in question was devised to his wife, Rebecca H. McLane, "for and during the term of her natural life, without impeachment of waste, and with the full right and power to sell, and deed any and all of said property (but not to dispose of said property by gift or by will) and to use such part of the principal as in her discretion may be necessary for her comfortable support" or for other purposes not now relevant.   The remainder at her death was devised to the testator's three children, who are the plaintiffs.

Mrs. McLane was placed under the conservatorship of her son, John W. McLane, and Ralph W. Davis, who on April 1, 1935, executed a lease of the premises to the defendant for the term of five years from that date, at a monthly rental of $150 payable in advance.

Mrs. McLane died on September 24, 1937.   On October 25, 1937, the plaintiffs notified the defendant that upon the death of the life tenant they had become owners in fee of the premises.   They added: "Until further notice, we authorize and direct you to make all payments for rents to our agents and attorneys, Warren, Wilson, McLaughlin & Wiggin . . ."

On or about November 10, 1937, the defendant sent to the plaintiffs' attorneys a check for $600 in payment of the rental for the months of August to November, 1937, inclusive.   No claim is made that the lease was avoided because the rental payments were in arrears at the time of the life tenant's death, nor is any claim made

that any of the rentals paid on November 10 should have been paid to Mrs. McLane's estate rather than to the remaindermen.

The attorneys for the plaintiffs, in a letter dated November 12, acknowledged receipt of the check and noted that McLane, Davis & Carleton, attorneys for the late life tenant, had turned over to them the lease. Then they added: "We have not been authorized by the James M. [sic] McLane heirs to ratify any leases made by Mrs. McLane during her life, and our acceptance of your recent payment of rent and our acceptance of rent in the future is not to be deemed in any way to prejudice any rights of the present owners in the property, and is to be considered reasonable rental for your use of the premises for the period covered by the payment."

The defendant did not answer this letter. On December 3, 1937, the defendant paid another $150, which would correspond to the December rental payment, but the defendant in doing so made no reference to its application, whether to payments under the lease or to payment for use of the premises independent of the lease. No attempt appears to have been made by the defendant to clarify the situation before December 27, 1937, when one of the defendant's attorneys verbally told one of the plaintiffs' attorneys that the defendant considered that the lease had been cancelled by the letter of November 12. The plaintiffs did not then admit, and appear never to have admitted, that they understood that letter as a cancellation of the lease. The letter of November 12 is capable of the construction that they distinctly reserved their rights under the lease. The defendant, however, insisting that the lease had been broken by the plaintiffs, continued to occupy the premises until June 2, 1938, meanwhile asserting their intention to vacate them. Rental payments at the rate of $150 a month have been paid to June 30, 1938. The plaintiffs in this action sought to recover rentals for the balance of the term, less amounts properly admissible in mitigation of damages.

The case was submitted, neither party excepting, on the theory that if a reasonable person in the defendant's position would have understood from the letter of November 12, 1937, that the plaintiffs were not bound by the lease, the defendant would not be liable; but if a reasonable person would not have understood the letter in that sense, the defendant would be liable. This being the law of the trial, we need inquire on this issue only whether the jury could find that the letter could have been reasonably understood as not waiving the lease.

The letter of November 12 was somewhat ambiguous. Upon the reasoning of *Cardozo*, J. in *Matter of O'Donnell*, 240 N. Y. 99, 107, the notice appeared on its face to be "provisional and temporary," with "little trace of a definitive election." It was reasonably to be deduced from it that the plaintiffs had not yet made up their minds whether to affirm the lease or to attempt to repudiate it, meanwhile accepting the payment without prejudice to their rights to determine that question later and then to make final application of the rental payments made subsequent to Mrs. McLane's death. Under the law of the trial, whether correct or not, it was plainly a question for the jury how the defendant should reasonably have interpreted the letter.

At the trial the defendant raised the question whether the lease was terminated as a matter of law by the death of the life tenant in whose name the lease was executed. In support of this claim we have been referred to the cases collected in 6 A. L. R. 1506–1507. The American cases have been examined; so also have supplemental decisions to 1942. As far as appears, all but two of these cases arose from mere life tenancies, the life tenant having no power to dispose of the premises. In the absence of the power, of course the lease in each instance terminated with the life estate, since the lessor had no power to "create an estate extending beyond the measure of his own estate." Tiffany, Real Property (3d *ed.*), s. 62. See also *Lord* v. *Roberts*, 84 N. H. 517–520, and cases there cited. As to the two cases where a power was coupled with the life estate, they furnish no authority for present purposes. In one the power was held invalid, as forbidden by statute; in the other case, the power was never exercised.

The will of James N. McLane gave the life tenant a wide power to sell and convey except by gift or will. The power to convey includes the power to mortgage. *Lord* v. *Roberts, supra*, 521. If the life tenant, in her discretion to dispose of the estate as might be necessary for her comfortable support, could mortgage it unless the will restricted her to an actual sale, no reason appears why she could not also make a lease that might run for at least a reasonable time beyond the term of her life. *Holland* v. *Company*, 314 Mo. 214; *Hines* v. *McCombs*, 2 Ga. App. 675; *Knapp* v. *King*, 15 N.B. 309. The only expressed restriction placed on her was that she should not give the property away, or will it. The lease did not overstep the limitation, and it could not be said that it was for an unreasonable time. The ruling on the motion for a directed verdict was not, in this respect, erroneous.

There can be no doubt that the lease was intended to run for the full five years, even if Mrs. McLane were to die meanwhile. The conservators entered into a covenant for peaceable possession by the lessee during the whole term of five years, and it was specifically provided that the words "lessor" and "lessee" should include "the heirs, executors, successors and assigns, as the context so admits." *Lake Erie &c. Co.* v. *Patterson*, 184 Pa. St. 364; *Shapleigh* v. *Shapleigh*, 69 N. H. 577, 579. If it might have been wiser for the parties to have induced the remaindermen to join as lessors, thus avoiding any question of the construction of their father's will, they were yet bound by the lease upon the construction here given of the will and of the lease. They are not held as heirs of the lessor, but as takers by way of remainder of property disposed of by the lessor and life tenant under powers granted by the devisor under whom they claim. Since it is plain that the jury found that they did not repudiate the lease, the defendant is liable.

The defendant makes the further claim that it was entitled to a directed verdict on the ground that the plaintiffs did not sustain the burden of proving that the lease was valid in its inception. It is now urged that it was invalid by reason of want of proof that the conservators had license from the Probate Court to enter into it. P. L., c. 289, s. 14; c. 291, s. 17. The point was not raised at the trial. If it had been, the plaintiffs might have had opportunity to reopen the case to supply the want of proof, and there is no way of knowing that they might not have been able to furnish the evidence.

The defendant's whole case rested at the trial on the tacit theory that the lease was originally valid, but that (1) it terminated as a matter of law on the death of the life tenant, or (2) it terminated because it was not ratified by the present parties, or (3) a breach of the lease by the plaintiffs had resulted in the defendant's right to terminate it. On that theory the defendant based its requests for instructions, all of which were denied except that relating to the third branch of the theory. While the defendant excepted to the denial of requests covering the first two points, it took no exception to the charge given that the conservators "had the authority to make this lease for Rebecca H. McLane," and that it "was a valid, legal lease, binding on all the parties." It is now too late for the defendant to raise the question as to the original validity of the lease. All questions were waived except those relating to the continued validity of the lease after the life tenant's death. Hening's Digest, 1282–1284.

It is unnecessary, therefore, to discuss the bearing upon the question of validity of the rule that a tenant is estopped to deny his landlord's title unless the tenant has been unable to obtain or retain possession by reason of the landlord's want of title. 32 Am. Jur. 110, 111, 113.

*Judgment on the verdict.*

All concurred.