DENNIS J. BRUNTON & others *vs.* EASTHAMPTON SAVINGS BANK.

Hampden.    September 26, 1957. — November 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Devise and Legacy,* Life estate. *Real Property,* Life estate. *Mortgage,* Of real estate: validity, mortgage by life tenant. *Power.*

Under a will giving all the testator's estate to his wife "to be used and enjoyed by her for her comfort and support during her natural life" and providing that "in case there shall be any part of my estate . . . not used by her for her comfort and support during her natural life, and . . . remaining upon her decease," such remaining property should go to the testator's cousins, the testator's widow took an estate for life

with a power to consume principal and to sell and convey the real estate and use such portions of the proceeds of sale as might be necessary for her comfort and support, but she was not empowered to mortgage the real estate and a mortgage given by her without invoking available statutory procedure was invalid.

PETITION, filed in the Probate Court for the county of Hampden on July 20, 1955.

The case was heard by *Stapleton*, J.

In this court the case was submitted on briefs.

*Emerson S. Searle & John F. Dowling*, for the respondent.

*Charles D. Sloan*, for the petitioners.

SPALDING, J. This petition is brought to obtain a declaratory adjudication as to the validity of a mortgage held by the respondent. The judge made a report of the material facts. The evidence is not reported.

The facts are these. Martin J. J. Brunton, hereinafter called the testator, died on July 29, 1947. He left a will, which was duly admitted to probate, under which his widow, Ester, was named executrix, and she served in that capacity up to and including the allowance of her final account on September 2, 1952.

Portions of the will here material are as follows: "I give, devise, and bequeath, all of my property and estate, both real and personal . . . to my wife Ester Veronica Dobson Brunton, provided she be living at the time of my decease, to be used and enjoyed by her for her comfort and support during her natural life. In case there shall be any part of my estate, given, devised, and bequeathed as aforesaid to my wife Ester Veronica Dobson Brunton, not used by her for her comfort and support during her natural life, and shall be remaining upon her decease, such property and estate real or personal, I give, devise, and bequeath, to my Cousins, Dennis J. Brunton, Daniel Brunton, Thomas Brunton, and Ellen Brunton."

The testator left personal property appraised at $3,341.63 and real estate appraised at $3,300. The real estate consisted of a house and lot at 35 Kendall Street, Springfield, which was the residence of the testator and his wife at the time of his

death. After the payment of debts and expenses of administration, the balance of personal property remaining in the estate was $158.98 which was paid to and used by Ester.

After the death of the testator, Ester continued to reside in the house on Kendall Street, and on September 9, 1952, she executed and delivered to the Easthampton Savings Bank, the respondent, a mortgage of the property to secure the payment of $5,000 which the respondent lent to her on that date. Thereafter, Ester made payments of interest and principal on the loan until her death on October 9, 1954, at which time the balance due on the mortgage note was $4,508.20. The assets of Ester's estate consisted of bank accounts amounting to $1,171.90 and household effects of small value.

This petition is brought by the remaindermen named in the testator's will, who are challenging the validity of the mortgage held by the respondent. The judge found that Ester "needed the proceeds of said mortgage loan for her comfort and support" and that, with the exception of the sums remaining in her bank accounts at her death, these proceeds were used by her for that purpose. The judge ruled, however, that "the mortgage . . . [was] invalid because the provisions of the will of . . . [the testator] conferred no power upon his widow . . . to mortgage the real estate devised by said will." A decree was entered in accordance with this conclusion from which the respondent appealed.

The questions for decision are (1) the extent of Ester's interest in the property here involved and (2) whether she had power to mortgage it. The petitioners and the respondent agree that Ester took no more than a life estate in the real estate. But the parties are not in agreement on the question whether Ester held her life interest with the power to consume principal. The respondent's position is that she had such power and the petitioners' position is that she did not. The words "to my wife Ester . . . to be used and enjoyed by her for her comfort and support during her natural life" if they stood alone would give Ester a life

estate without power to consume principal. *Langlois* v. *Langlois*, 326 Mass. 85. But in the next paragraph the will provides, "In case there shall be any part of my estate . . . not used by her for her comfort and support . . . and shall be remaining upon her decease" such property was to go to designated remaindermen. Reading these provisions together, as we must, we are of opinion that Ester took an estate for life with a power to consume principal and that she could sell and convey the real estate and use such portions of the proceeds as might be necessary for her comfort and support. The case at bar in this aspect cannot be distinguished from and is governed by *Johnson* v. *Battelle*, 125 Mass. 453, and *Champney* v. *Bradford*, 196 Mass. 259.

We now turn to the question whether Ester had the right to mortgage the real estate to the respondent. Relying on the case of *Hoyt* v. *Jaques*, 129 Mass. 286, the petitioners contend that Ester had no right to mortgage the property. There the testatrix gave to her husband and executor "so much of any and all . . . [her] estate," real or personal, "as may be sufficient for his comfortable maintenance and support for and during the term of his natural life, he having full power to sell and convey any and all of . . . [the] real estate, at any time, if necessary to secure such maintenance." In another clause the testatrix gave the residue of her estate to her daughter. The husband gave a mortgage to the demandant and the question for decision was whether the mortgage was valid. It was held that the husband took no more than a life estate in the property with a power to sell the whole or any part of it if it was necessary to secure him comfortable maintenance and support. But it was further held that the power to sell did not include the right to mortgage the property. The court said, at page 288, "In the ordinary case of a power 'to sell and convey' land, given by a principal to his attorney, it is clear that the attorney would not be authorized to mortgage the land. . . . The two transactions of a sale and a mortgage are essentially different. A power to sell implies that the attorney is to receive for the benefit of the principal a fair and adequate

price for the land; a power to mortgage involves a right in the attorney to convey the land for a less sum, so that the whole estate may be taken on a foreclosure for only a part of its value. So, under a will, a trust with a power to sell prima facie imports a power to sell 'out and out,' and will not authorize a mortgage, unless there is something in the will to show that a mortgage was within the intention of the testator. . . . In the case at bar, the power given to the life tenant is 'to sell and convey any and all of my real estate, at any time, if necessary to secure such maintenance.' This language does not in its terms import a power to mortgage; and we find in the will no decisive indications that the testatrix intended to use it in any other than its natural and obvious meaning. Thus used, it gives the husband the power to sell and convey for a fair price any or all of the real estate, if necessary for his comfortable support, but it does not give the right to mortgage the estate for a part only of its value. The intention appears from her language to have been that her husband, if it became necessary for his support, might sell the real estate and convert it 'out and out,' and not that he might at his discretion charge it with incumbrances and liens."

The respondent relies on the case of *Kent* v. *Morrison,* 153 Mass. 137. There the testator by his will gave to his wife his entire estate "giving her full power to sell and convey the same by deed (part or all of it), and the proceeds thereof are to be used for her comfort, and otherwise as she may think proper," and at her death the remainder, "not specifically disposed of by her," was to be used for the benefit of his two sons. The question for decision was whether a mortgage given by a guardian (the wife having been adjudged insane) under license of the court was valid. It was held that, although the wife took a life estate rather than a fee, she took the life estate with a power of conveying the fee by deed. Construing the power to sell, the court said, at page 140, "This is a power to sell for any purpose, and to use the proceeds in any manner the devisee may think proper. Under it the devisee may sell all or any part of the

real property, and make the proceeds her own, whether necessary for her support or not. Such a power is as ample as that of an owner, only it must be executed by deed. It is an absolute and unrestricted power to sell for the benefit, and in the discretion, of the devisee of the power, and we think that this includes a power to mortgage." The court in *Kent* v. *Morrison* did not purport to impair the authority of *Hoyt* v. *Jaques* but concluded that it was not controlling in view of the differences in the language granting the power of sale.

We are of opinion that the case at bar is governed by *Hoyt* v. *Jaques* rather than by *Kent* v. *Morrison*. In the *Kent* case, the power of the life tenant was as broad as that of the owner of the fee, except that the life tenant could not devise the property. In such case the testator has indicated that the interests of the remaindermen are dependent on the absolute discretion of the life tenant, and do not require or deserve any protection from his acts. In the *Jaques* case, however, the power of the life tenant was limited to provide for the maintenance and support of the life tenant and the interests of the remainderman become more important. The implied power to sell given to Ester here is no broader than the express power given in *Hoyt* v. *Jaques*, and falls far short of the power given in *Kent* v. *Morrison*.[1] In the case at bar the testator has shown an intent to make a devise to the designated remaindermen if the property is not needed for the specified purpose of comfort and support of the life tenant. When the testator has shown a greater desire to benefit the remaindermen than was present in the *Kent* case, that intent must be respected and protected. It might plausibly be argued that the power to mortgage is a lesser power included in the power to sell. But it is one thing to sell and quite another to mortgage. In the case of a sale the full value of the property is received in cash and can be held in appropriate form for the life tenant and remaindermen.

---

[1] In a subsequent clause in the will Ester was expressly given a power to sell the real estate as executrix, but this related only to her duties as such and did not enlarge her powers as life tenant. *Langlois* v. *Langlois*, 326 Mass. 85.

But in the case of a mortgage the remaindermen's interest, as represented by the equity of redemption, is subject to greater risks because if the life tenant is in default under the mortgage the property may be sold at a foreclosure sale for a fraction of its value.

We can conceive of situations where it might be desirable for the life tenant to mortgage the property for his or her support rather than to make an out and out sale. Thus, as in the case at hand, the life tenant would be able to stay on and occupy the property, a result which often would be — and doubtless was here — in accord with the wishes and intent of the testator. Despite the fact that Ester, the life tenant here, had no power derived from the will to mortgage the property, she was not without means of accomplishing this result. She could have invoked the procedure afforded by G. L. (Ter. Ed.) c. 183, §§ 49, 50 and 51.[1] Under this procedure the mortgage would be authorized by the court and the rights of both the life tenant and remaindermen would be protected. But this course was not adopted.

It follows that the mortgage here was invalid and the final decree must be affirmed.

*So ordered.*

---

[1] Section 49 reads: "If land is subject to a vested or contingent remainder, executory devise, conditional limitation, reversion or power of appointment, the probate court for the county where such land is situated may, upon the petition of any person having an estate or interest therein, either present or future, vested or contingent, and after notice and other proceedings as hereinafter required, appoint one or more trustees and authorize him or them . . . to mortgage the same for such an amount, on such terms and for such purposes as may seem to the court judicious or expedient; and such . . . mortgage shall be valid and binding upon all parties."