Sharpe v. Helmer, No. 727-11-10 Wrcv (DiMauro, J., Mar. 28, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor Unit | Docket No. 727-11-10 Wrcv |

Mary Sharpe
     Plaintiff

v.

Jill Barber Helmer and Nancy Hartman Sperling
     Defendants


Decision on Defendants' Motion for Summary Judgment

At issue in this case is the scope of the reservation in an "enhanced life estate deed." The essential facts are that Isabel Barber quitclaimed her interest in a condominium unit to her caretaker while reserving for herself (1) a life estate in the condominium and (2) the right to convey the entire property "in fee simple absolute or any lesser fee" without the grantee's consent. Ms. Barber then mortgaged the fee-simple interest several years later to her nieces as security for several loans. Ms. Barber has since passed away.

Plaintiff Mary Sharpe is the caretaker-grantee, and she is seeking to sell the condominium unit. She has asked the court for a declaration regarding the validity of the mortgage asserted against the fee-simple interest by the nieces, defendants Jill Barber Helmer and Nancy Hartman Sperling. Plaintiff argues first that the mortgage is void because defendants did not obtain "lender licenses" from the Vermont Department of Banking, Insurance, Securities, and Health Care Administration before lending money to their aunt. Plaintiff argues second that the mortgage is ineffective because the language of the "enhanced life estate deed" does not include a reservation of the right to mortgage or encumber the condominium unit. Defendants have moved for summary judgment on both arguments.

The first question is whether defendants were required to obtain a license from BISHCA under the Vermont Licensed Lender Act, 8 V.S.A. § 2201 et seq. In general terms, the VLLA is part of a series of banking laws meant to ensure that "the business of organizations that offer financial services and products" is regulated in a manner "to assure the solvency, liquidity, stability and efficiency of all such organizations, to assure reasonable and orderly competition, . . . [and to] protect consumers against unfair and unconscionable practices." 8 V.S.A. § 10(1)–(2); *In re Gorman*, 274 B.R. 351, 357 (D. Vt. 2002). Specifically, the VLLA prohibits any person from "engag[ing] in the business of making loans of money" without first obtaining a license from BISHCA. 8 V.S.A. § 2201(a)(1). Among the various penalties that may be imposed for a knowing and willful violation of the licensing requirements is a civil remedy voiding the unlicensed loan in its entirety. 8 V.S.A. § 2215(d)(1). Plaintiff seeks that remedy here.

Even aside from the fact that there is no evidence of a "knowing and willful" violation in this case, the VLLA does not require a license for "single or isolated" loans when there is no evidence that the lending individual is engaged in an ongoing business of offering loans or other financial services to the general public. By its own terms, the VLLA licensing requirement applies only to persons who "*engage in the business*" of moneylending. 8 V.S.A. § 2201(a)(1) (emphasis added). As Judge Hayes persuasively explained in a recent opinion from this court, professional-licensing statutes using this language have long been interpreted as *not* applying to persons who engage in single or isolated acts related to the licensed activity, because such isolated activities do not constitute a "business" subject to administrative regulation. A person does not "engage in the business" of moneylending, therefore, merely by offering one or two isolated loans to friends or family members, but rather a person "engages in the business" of moneylending by performing a series of acts that would fairly lead to the conclusion that the person is offering loans or other financial services to the general consumer marketplace. See *Hawk Resorts Int'l, L.P. v. Colburn*, No. 90-2-10 Wrcv, slip op. at 2–6 (Mar. 23, 2011) (attached) (citing, e.g., *Currier v. Tuck*, 287 A.2d 625, 627 (N.H. 1972)).

In this case, there is no evidence that defendants have held themselves out as offering loans or other financial services to anyone in the general consumer marketplace, or even to other family members. All that the evidence shows is that the defendants made several loans, secured by one mortgage, to their aunt during the last year of her life. The court is not persuaded that the legislature intended for the banking laws and administrative regulations to apply to these circumstances.

Plaintiff argues that a license was nevertheless required because there is a specific statutory exemption in 8 V.S.A. § 2201(d)(14) for residential mortgage loans between "immediate family members"—a defined term which does not include the relationship between aunt and niece. Plaintiff argues that because defendants do not fall within the exemption, a license is required. It must be noted, however, that the exemptions from licensing in § 2201(d) apply only if the person is otherwise "engage[d] in the business of making loans of money" such that a license is required in the first instance under § 2201(a)(1). It would not make sense to interpret the exemption in § 2201(d)(14) as *expanding* the scope of the licensing requirement in § 2201(a)(1) to *include* family members who make a single or isolated loan to a beloved aunt or cousin but who have not otherwise engaged in the "business" of moneylending. It would not serve the purposes of the statute to extend administrative oversight to situations where there are no institutional or consumer interests at stake.[1] See *R&G Properties, Inc. v. Column Financial, Inc.*, 2008 VT 113, ¶¶ 41–45, 184 Vt. 494 (explaining that the scope of the exemptions from licensing under VLLA must be determined with reference to the purposes of the licensing requirements as a whole). For these reasons, the court is not persuaded that the VLLA applies to this case.

---

[1] Put another way, it would be remarkable if the commissioner of BISHCA found it appropriate to impose administrative penalties on defendants under § 2215(a) for lending money to their aunt during the last year of her life. It may be noted that there are other procedures available for the protection of the personal interests at stake in intra-family end-of-life financial transactions, but that in this case there is no suggestion that defendants took advantage of their aunt or that Ms. Barber otherwise lacked the capacity to understand her financial affairs.

2

Plaintiff argues second that the mortgage is ineffective because Ms. Barber did not retain the right to mortgage the fee-simple estate as part of her "enhanced life estate." As mentioned above, the quitclaim deed at issue in this case granted the condominium unit to plaintiff while reserving a life estate and the "right to convey all or any portion of the premises . . . during [the grantor's] natural life in fee simple absolute or in any lesser fee, without the consent of the grantee." Although the legal treatment of such deeds has been relatively sparse over the years, the basic structure has been recognized as effective for more than a century, and is generally understood as conveying either a present defeasible interest in the fee or a future contingent interest in the fee. See John C. Newman and Ron R. Morgan, *Tax and Medicaid Planning Aspects of the Standard Vermont Estate Plan—2007 Update*, 33 Vt. B. J. 28 (Winter 2007/2008) (discussing various characteristics of the "life estate with power to sell"). The most important issue for purposes of this case is determining whether the life tenant's reserved rights with respect to the fee-simple estate are "exercised in accordance with the conditions set forth in the granting document." *Weed v. Weed*, 2008 VT 121, ¶ 12, 185 Vt. 83; *Stasieczko v. Nichols*, 137 Vt. 112, 112–13 (1979).

Plaintiff argues that the grantor did not reserve the right to mortgage the property because she reserved only the right to "convey" a "fee interest" in the property. A number of cases discussing "enhanced life estates," however, have recognized a general principle that a life tenant's reservation of the power to convey the property in fee simple "includes a power to mortgage." *Kent v. Morrison*, 26 N.E. 427, 428 (Mass. 1891); *McLane v. Silver Bros., Inc.*, 31 A.2d 305, 307 (N.H. 1943); *In re Stannert's Estate*, 15 A.2d 360, 363 (Pa. 1940). The basic reasoning in these cases is that the power to mortgage is included within the power to sell, and thus a life tenant's reservation of the right to sell the fee-simple estate shows that the life tenant intended to reserve the right to mortgage the same unless some contrary intent appears either in the deed or from the circumstances surrounding the making of the deed (to the extent such extrinsic evidence is admissible under the rules articulated by such cases as *Kipp v. Estate of Chips*, 169 Vt. 102, 107 (1999) and *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579 (1988)). See *Brunton v. Easthampton Sav. Bank*, 145 N.E.2d 696, 699–700 (Mass. 1957) (providing example of when deed would show contrary intent, as when life tenant's power to sell was limited to apply only as necessary for the maintenance and support of life tenant).

Plaintiff argues that a contrary intent is shown here because a mortgage is not a "fee interest" in the property, but rather a security interest in the fee. It appears to the court, however, that this interpretation of the deed focuses too narrowly on the noun and does not give enough consideration to the reservation clause as a whole (keeping in mind the aforementioned rule that the power to convey includes the power to mortgage) or to the overall purpose of "enhanced life estate" deeds. Cf. *In re Guité*, 2011 VT 58, ¶ 9 (explaining that "[o]ur master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement") (quoting *Kennedy v. Rutter*, 110 Vt. 332, 338 (1939)). For example, a deed in which the life tenant reserved the right "to convey and mortgage" the fee interest in the property would undoubtedly reserve the right to mortgage the entire property regardless of the fact that the deed used the same noun—"fee"—as in the present case. It follows that the scope of this particular reservation clause is not controlled by the noun but rather by the scope of the life tenant's right "to convey" the property—and for the reasons discussed above, the reservation of the right "to convey" includes the right "to

mortgage." Because plaintiff has not offered any other evidence that the parties intended a different outcome, the court concludes that Ms. Barber unambiguously reserved the right to convey the fee-simple interest in her condominium unit *and* the right to mortgage the same.

Finally, in reviewing the motion paperwork, there appears to be a dispute between the parties as it relates to the accounting. Because the issues are so squarely before the court at this time, the court would be willing to entertain an amended complaint in this docket for the limited purpose of resolving the accounting issues, so as to obviate the need for the filing of another case (if, in fact, there is a dispute to an extent that the parties cannot resolve themselves). If plaintiff does not seek such relief by motion by April 15, 2012, the court will assume that the parties have resolved the issue and will enter final judgment in this docket accordingly.

## ORDER

Defendant's Motion for Summary Judgment (MPR #2), filed August 18, 2011, is *granted*. If plaintiff does not file a motion to amend the complaint for the limited purpose of seeking an accounting by April 15, 2012, the court will enter final judgment in accordance with this decision.

Dated at Woodstock, Vermont this _____ day of March, 2012.


_____
Theresa S. DiMauro
Superior Court Judge

4