ELIJAH KEELER v. ELMER R. WOOD.

### Deed. Covenant.

A deed, after the descriptive part, contained the following words: "reserving from the premises above described three west rows of apple trees in the orchard, two stalls in the southwest corner of the barn, and twelve feet square over said stalls for hay, *which is reserved for the use of our mother, Mary Wood.*" *Held*, that these words reserved only an estate for the *life* of Mary Wood.

Keeler v. Wood.

In an action for the breach of a covenant of warranty in a deed, the rule of damages is the value of the land at the time of eviction, the costs and damages which the plaintiff has been obliged to pay to the adverse party in the suit brought against him, with interest, and his own costs and necessary expenses, including counsel fees, in the suit, with interest.

COVENANT. The following facts were agreed upon by the parties: The defendant executed a deed of certain land in Brandon, dated October 3, 1837, with a covenant of warranty, to Oliver E. Lawrence, and Lawrence, on the 11th of March, 1841, deeded the same land to the plaintiff with a similar covenant. Each of these deeds contained the following words after the description of the land conveyed: " reserving from the premises above described three west rows of apple trees in the orchard, two stalls in the southwest corner of the barn, and twelve feet square over said stalls for hay, *which is reserved for the use of our mother, Mary Wood.*" The premises described in these deeds were a part of the real estate of Elijah Wood, who died intestate in 1834, and left a widow, Mary Wood, and six children, of whom the defendant was one. Oliver E. Lawrence and Nathan W. Patch each married daughters of Elijah Wood, both of whom survived their father. The widow's dower in Elijah Wood's estate was set out November 5, 1834, and included the apple trees and the portion of the barn described in the above reservation. A division of the reversion of the widow's dower was made in May, 1851, among the heirs of Elijah Wood, and in said division the reversion of the same premises described in the above mentioned reservation, together with other land, was set to Mrs. Patch.

Mary Wood, the widow, occupied the two stalls and the twelve feet square over the stalls, and gathered the apples from the three rows of apple trees on the west side of the orchard from the time her dower was set out until her death, which took place in December, 1849. Lawrence, up to the date of his deed to the plaintiff, and the plaintiff after that time, occupied all the land described in their deeds, except the portion of the barn above reserved, but they allowed Mary Wood to gather the apples from the three rows of apple trees above described. After her death the plaintiff took possession of all the premises described in the deeds of the defendant and Lawrence.

Keeler *v.* Wood.

Mrs. Patch and her husband, Nathan W. Patch, then brought an action of ejectment against the plaintiff and Ebenezer N. Briggs, to recover the land on which the said three rows of apple trees stood and also the portion of the barn above described, which action, at the February Term, 1855, of the supreme court for the county of Rutland, finally resulted in a judgment in favor of Patch and wife against the plaintiff and Briggs, for the premises declared for, and for sixty-five dollars damages and one hundred and three dollars costs.* A writ of possession was issued upon this judgment, and the plaintiff paid the damages and costs therein, and Patch and his wife were put in possession of the premises recovered. After the commencement of that suit and before any trial therein, a notice was served upon Lawrence and the defendant, vouching them in to defend the suit. The value of the premises recovered in that suit, as well as the amount expended by the plaintiff therein, were also agreed upon.

The question submitted by the parties to the court was whether the deeds from the defendant and Lawrence contained a warranty of title to the plaintiff of the premises recovered by Patch and wife, excepting a life estate in Mary Wood, and whether, after the death of Mary Wood, the eviction of the plaintiff by the recovery of Patch and wife was a breach of the defendant's covenants. The county court, at the September Term, 1857, by consent of the the parties, rendered judgment, *pro forma*, for the defendant. Exceptions by the plaintiff.

*Briggs & Nicholson*, for the plaintiff.

*R. V. Marsh* and *Edgerton & Hodges*, for the defendant.

The opinion of the court was delivered by

Aldis, J. The defendant conveyed by a warranty deed certain lands in Brandon. At the end of the description of the lands are these words: " reserving from the premises above described, three west rows of apple trees in the orchard, two stalls in the southwest corner of the barn and twelve feet square over said stalls for hay,

* See 28 Vt. 332.

which is reserved for the use of our mother, Mary Wood." The question for this court to decide is, do those words reserve an estate for the life of Mary Wood, or an estate in fee simple?

We are to put a construction upon these words according to the plain sense of them, and as the parties themselves must be supposed to have understood them at the time the deed was executed. If the words had been "reserving from the premises" (the land described) "for the use of our mother, Mary Wood," it seems to us that there could have been no doubt that an estate for life only was intended. On the other hand if the sentence had been written, "reserving from the premises, etc., (the land described), and had wholly *omitted* the words "which is reserved for the use of our mother," the meaning then would have seemed to be plainly the reservation of the land described in fee simple; it would then have been construed as an exception of the land so described from the operation of the deed. It is contended on the part of the defendant that the words which follow the description of the land, viz: "which is reserved for the use of our mother," serve only as an *additional* description of the land, and were not intended to describe *the nature and character of the estate* reserved in the land. This construction can certainly be adopted without any great violence to the language used, but it does not seem to us to be its natural signification. The clause, "which is reserved for the use of our mother," seems to us to be used as referring back to the whole of the preceding reservation and indicating that it (the *whole of it*) was made for the use of the mother, Mary Wood.

So, too, the kind and character of the property reserved, indicate the same intention. It is not unnatural to reserve the use of two stalls and twelve feet square over them *for life*, but it is unnatural to make such a reservation in fee simple; and the same may be said of the three west rows of apple trees in the orchard. It indicates an intent to use the apples of the trees rather than to have and own a specific piece of land, a use natural and consistent with a grant for life; but if the intent had been to reserve the land itself in fee simple, it seems as if language better adapted to describe the land itself, and not pointing to the use of the apple trees merely, would have naturally been used by the conveyancer. So the word "reserving," strictly and technically used, would imply a

reservation of some use, or lesser estate, out of the estate granted, while the words "excepting" or "saving" imply an exception out of the conveyance of a part or parcel of the very thing granted, and are appropriate to describe the exclusion of the land itself from the operation of the deed. This distinction, however, is so rarely observed by those who draw deeds in this country, the words "excepting" and "reserving" being generally used as synonyms, that perhaps but little weight ought to be attached to the use of the word reserving.

As the plain and natural meaning of the whole sentence, construed together, seems to us to indicate the reservation of an estate for life only — as such construction would seem to be reasonable and consistent with the character and description of the property so reserved, and as the construction in doubtful cases is to be against the grantor, we have concluded that the deed should be construed as reserving only an estate for life.

The rule of damages is the value of the land at the time of eviction, the costs and damages which the plaintiff has been obliged to pay to the adverse party in the suit brought against him, with interest, his own costs in the suit, with interest, and necessary expenses, which include counsel fees.

The judgment of the county court is reversed.