CHARLES HALDIMAN *v.* FRANK C. OVERTON.

Special Term at Rutland, November, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 5, 1922.

*"Reservation" and "Exception" Construed as Synonyms When So Intended—Reservation of Right to Take Water From Spring Held An Exception—Right to Lay Aqueduct Included—Rights of Subsequent Parties—Quantity of Water Secured by Exception.*

1. The terms "reservation" and "exception" are often used synonymously when the thing to be secured to the grantor is a part of the granted premises, and when so used they are to be construed accordingly; the intention of the parties, and not the language used, being controlling.

2. A provision in a deed "reserving" to the grantor the right to bring water in pipes or logs from a spring on the land conveyed to the grantor's dwelling house on adjoining land, construed, in view of the surrounding circumstances, as an exception and not as a reservation.

3. The fact that no aqueduct had been laid to the spring at the time of the deed is immaterial, as the exception not only secured to the grantor the right to take water from the spring, but also to do whatever was reasonably necessary to make such right available for the purpose for which it was intended.

4. The grantee having acquired no title to the right secured by the exception, his successors in interest acquired no title to the same, although there was no reference to such right in their respective deeds.

5. An aqueduct to the spring having been built and used by the grantor before he conveyed his premises, the right secured by the exception passed to his successors in interest as an appurtenance to the property conveyed; the deeds conveying the property described "with all the appurtenances thereof."

6. The right secured by the exception did not limit the grantor's successor to the quantity of water required for household purposes at the time the exception was made, but entitled him to such water as was used for household purposes with modern conveniences and elsewhere on the premises at the time the suit was brought.

APPEAL IN CHANCERY. Bill for an injunction. Heard on the pleadings and facts found by the Chancellor after the December Term, 1920, Bennington County, *Chase,* Chancellor. Decree for the defendant. The plaintiff appealed. The opinion states the case.

*Charles A. Maurer* and *J. K. Batchelder* for the plaintiff.

*Edward Griffith, Frank C. Archibald,* and *Robert E. Healy* for the defendant.

SLACK, J. The defendant takes the water that he uses at his dwelling house and for other domestic purposes from a spring located on plaintiff's land. The plaintiff seeks by injunction to prevent or limit defendant's use of said water.

The parties derive title to their respective lands from a common owner, Seth P. Sykes, who owned the land now owned by both parties from October, 1868, to December 26, 1874, when he and his wife conveyed part of it, being the pasture where this spring is located and the meadow across which the aqueduct is

laid, to G. S. Utley and others. The deed to Utley contained a description by bounds of the land conveyed and following the description this clause: ''Reserving of the within described lands the schoolhouse lot in District No. 4 for school privileges; also the use of the sap house opposite my house for the purpose of making sugar so long as said sap house may stand where it now does, reserving the right to move said sap house when I see fit to do so; also of bringing water from the spring on said land in logs or pipe to my dwelling house.'' The land thus conveyed is now owned by plaintiff. In each of the several deeds in his chain of title, the description of the land conveyed is by reference to the next preceding deed, and in each deed prior to one dated October 16, 1905, the words, ''reserving as therein reserved'' follow the reference to the prior deed. These words were omitted from the deed of October 16, 1905, and from all subsequent deeds. The property now owned by defendant was conveyed by Sykes and wife to Loveland Munson May 2, 1881, and Munson's title has come down to defendant through various mesne conveyances.

None of the deeds in defendant's chain of title, except the deed to him, contain any express mention of the right to take water from this spring, but each conveys the property described ''with all the appurtenances thereof.'' Defendant's deed refers to the water right now claimed by him, and purports to convey to him whatever rights his grantor had in the spring. Sykes occupied the dwelling house now owned by defendant which is located on that part of the Sykes farm to which defendant now has title, from 1868 until he conveyed those premises to Munson, in May, 1881. Sometime prior to 1878, the date not appearing, he laid an aqueduct of pump logs from his house to the spring in question, and for many years thereafter supplied the house with water from this spring.

The plaintiff contends that the language in the deed from Sykes and wife to Utley, ''Reserving'' the right, * * * ''also of bringing water from the spring on said land in logs or pipe to my dwelling house,'' constitutes only a reservation of a personal privilege to Sykes which could not pass to his heirs or assigns because no words of inheritance or assignment were used in connection therewith; while the defendant contends that the clause has the force of an exception, and that the servient estate thereby created passed to the subsequent owners of the dominant estate without such words of limitation being used. The disposition

of the case depends largely upon the construction given this clause.

[1, 2] The terms "reservation" and "exception" are often used as synonymous when the thing to be secured to the grantor is a part of the granted premises, and when so used they are to be construed accordingly. *Smith's Exr.* v. *Jones*, 86 Vt. 258, 84 Atl. 866; *Dee* v. *King*, 77 Vt. 230, 59 Atl. 839, 68 L. R. A. 860; 2 Wash. Real Prop. § 645. The intention of the parties, not the language used, is controlling; and to ascertain the intention it is proper to look at the surrounding circumstances existing when the deed containing the language in question was made, the situation of the parties, and the subject-matter to which such language relates. At the time Sykes deeded to Utley, Sykes was taking, or contemplated taking, water from this spring to supply his house. His interest as owner of that part of the premises retained by him required that he secure for use thereon a supply of water available for all times. The value of his premises depended upon this. And there is no reason to suppose, in the circumstances, that he intended to limit the right to take water from this spring to the uncertain period of his own life, and thereby materially lessen the value of the property in the market, or as an asset of his estate. This must have been understood by Utley when he took his deed. Clearly under the law and in the light of the foregoing circumstances, the clause must be construed, not as a reservation, but as an exception.

[3] Whether the aqueduct had been laid to the spring at the time of the deed to Utley is immaterial. The spring was in existence, and the exception not only secured to Sykes the right to take water therefrom, but to do whatever was reasonably necessary to make that right available for the purpose for which it was intended. *Cram* v. *Chase*, 35 R. I. 98, 85 Atl. 642, 43 L. R. A. (N. S.) 824; *Stevenson* v. *Wiggin*, 56 N. H. 308. In *Smith's Exr.* v. *Jones, supra,* the language of the deed was held to create an estate of inheritance, although the way was not defined or visible at the time of the conveyance. Moreover, the finding that Sykes repaired the pump logs only four years after he conveyed to Utley would fairly support the inference that the aqueduct had been laid before such conveyance.

[4] Utley acquired no title to the right secured to Sykes by the exception, and the absence of reference to such right in the

deeds in plaintiff's chain of title is immaterial as between these parties.

[5]  The aqueduct was built, and no question is made but that it was in use, when Sykes deeded to Munson in May, 1881. This being so, the right secured to Sykes by the exception in his deed to Utley passed to Munson, and in turn to his successors in title, as an appurtenance to the property conveyed (*Ord* v. *Terry*, 91 Vt. 148, 99 Atl. 778; *International Paper Co.* v. *Bellows Falls Canal Co.*, 91 V't. 350, 100 Atl. 684; *Phillips* v. *Cutler*, 89 V.t. 233, 95 Atl. 487, and many earlier cases), and is now owned by defendant.

[6]  The original aqueduct was built of pump logs with a one-inch bore, and conveyed the water into a box in the woodshed. The flow of water was constant, and what was not used ran to waste. Parts of this aqueduct were at some time replaced with pipe. In 1882 or 1883, one Reynolds moved into the Sykes house and lived there about fifteen years. During that time until the barn burned (when that occurred did not appear) water ran into a trough in the barnyard and was used there. It also ran into, and was used in, the milk room. In 1918, defendant remodeled and enlarged the Sykes house, and equipped it with baths; flush closets, sill cocks, and numerous faucets, and changed the flow of water somewhat at the barns and in the dooryard. To meet the demand for more water occasioned in part by these changes, and to protect the water from pollution by stock in the pasture, he built a concrete tank around the spring, and built a roofed wooden structure on top of the concrete. He increased the flow of water about one-third without increasing the area of the spring; and greatly improved the spring for the use he desired to make of it, but rendered it of little or no value for other purposes. No water now escapes from the spring into the pasture except what runs through an overflow pipe arranged near the top of the concrete at times when there is sufficient water to do that. The water from the spring never formed a stream on the surface of the ground for any distance, except in the wet season, but soaked into the ground soon after leaving the spring; and it did not appear whether stock in plaintiff's pasture could get water at the spring prior to August, 1917. From that time until defendant built the concrete tank stock could get water there.

The plaintiff contends that if defendant is entitled to take water from this spring, he is limited in quantity to what would be required for household purposes, measured by the conditions and surroundings that existed at the time that Sykes deeded to Utley—not to the amount then or previously taken, because plaintiff denies that the aqueduct had been constructed at that time. The cases relied upon by plaintiff to support this claim are cases where the language of the grant or reservation was held to amount to a measure of the quantity of water to be used, and, in such cases, the quantity taken at the time the instrument was executed is held to be determinative, nothing appearing to indicate that a different quantity was intended. These cases are not helpful, unless the language of the deed before us is held to constitute a measure of the quantity of water to be used. We do not think this language should be so construed. While the description of the thing intended to be reserved, so far as the water is concerned, is somewhat inartificially drawn, and is, perhaps, susceptible of receiving such a construction as to give it somewhat the air of indefiniteness, this is often the case where we attempt to apply the strict rules of construction to the precise words used, not sufficiently keeping in mind, at the time, the situation of the parties and the state of the subject-matter. But if the subject-matter and the situation of the parties is given proper consideration, there is usually little difficulty in ascertaining the real intention, and that is the determinative thing in all cases, as is clearly shown by the authorities cited by both parties. What was intended by the language of the deed before us, having in mind the situation of the parties and the subject-matter? The plaintiff admits that if the language was "bringing *the* water" instead of "bringing water" it might mean *all* the water. While the language suggested would have been more definite than the language used, the omission of the word "the" is not decisive of the parties' intention.

When Sykes conveyed to Utley the pasture where this spring is located, Sykes wanted the water from this spring to use at the buildings located on that part of the farm still owned by him. He had authority to do with the water as he saw fit, convey all or a portion of it, or reserve the use of all or a portion of it. This being the situation, and no limitation as to quantity being expressed in the exception, and it not appearing that such limitation was intended, we entertain no doubt that the language of the

Sykes deed was intended to secure to the owner of the dominant estate not only the right to as much of the water of this spring as might be reasonably necessary to a convenient use and enjoyment of the dwelling house, as such, at all times, but also the right to use, at least, as much water at the barn and elsewhere as is used at the present time. Whether a greater quantity of water than is now used might be taken if needed at the barn or other buildings, or whether the water could be put to a different use than that now made of it, is not decided.

To limit the use of water as the plaintiff claims it should be limited would prevent furnishing it to all the occupants of the Sykes house if the number appreciably exceeded the number living there when this exception was created, would prevent the use of modern conveniences such as baths, flush closets, etc., if additional water was required, would prohibit the use of water at the barns or elsewhere about the buildings, and would practically destroy the right which we think Skyes intended to secure for the dominant estate. Former owners of the respective lands long since construed the exception in the Sykes deed as giving the owner of defendant's place the right to use the water at the barn. As we have seen, water was piped to the barn in 1882 or 1883, and used there until the barn was burned, without the right to do so being questioned as far as appears. It is not claimed that defendant did more at the spring than he had the right to do, if entitled to take the quantity of water he is now using.

In view of our conclusions, plaintiff's application for further hearing on the merits to enable him to show the increased demand for water due to the changes made in the Sykes house in 1918-1919 was properly denied, and the exception to such denial is without merit.

The plaintiff saved other exceptions, but, not having briefed them, they are not considered.

*Decree affirmed, and cause remanded.*