## HOUSTON OIL CO. OF TEXAS et al. v. WILLIAMS et al.

### No. 4361½.

Court of Civil Appeals of Texas. Texarkana.

Feb. 3, 1933.

Rehearing Denied Feb. 9, 1933.

Williams, Lee, Hill, Sears & Kennerly, of Houston, and Bramlette & Meredith, of Longview, for appellants.

Wynne & Wynne, of Longview, for appellees.

LEVY, Justice (after stating the case as above).

■ This court is called upon, in order to determine the leasehold estate and rights of the parties to this appeal in the respective particular tracts of land involved in the suit, firstly, to define the limits of the portion of land designated in the excepting clause; and, secondly, to declare the character of the estate and right, if any, which has passed to each party in such particular excepted portion of land. Stated in other words, it becomes necessary in this appeal to determine the area of the graveyard excepted and to define its boundaries, and to declare the character of the estate and right, if any, that each party to the appeal has in such graveyard. In the lease to appellant, and in the prior deeds in evidence, appears following the description designating the 220-acre tract of land the clause reading: "Save and except about ½ acre of land in the south end of this tract, known as the McCutcheon Graveyard." The clause refers to property excepted in terms sufficiently explicit to enable it to be identified, and the exception may not be considered void for uncertainty. The description is such that not only reasonably defines the excepted land, but is such that, aided by extrinsic evidence, the premises referred to can be ascertained with certainty. The words of description, though, of "about ½ acre in the south end of this tract" are not words of themselves of cer-

tainty as to quantity and form, and may not be so regarded in the light of the other words immediately following of "known as the McCutcheon Graveyard." The words "known as the McCutcheon Graveyard" were evidently used as a method for ascertaining and identifying the "about ½ acre" referred to as located in the south end of the tract. Ordinarily a description of a definite quantity in the particularly described larger tract may be held to mean such quantity lying in square form in the corner named. But, under a conceded rule, although quantity may be an aid in locating granted or excepted premises, yet it does not control where there are other features in the description which go plainly to show an intention to describe a particular tract or lot rather than a particular quantity of land. 14 Tex. Jur. § 228, p. 1022; 18 C. J. p. 293; 2 Devlin on Deeds (3d Ed.) § 1013b, pp. 1029–1033. Where this is true, mere quantity will not prevail. In this condition the excepting clause intended to describe a lot or parcel, in quantity and form, particularly "known as the McCutcheon Graveyard." Looking to the facts relating to the plot "known as the McCutcheon Graveyard," it visibly appeared on the ground, as conclusively established, at the time of the execution of deeds, and of the leases in evidence, that the burial ground had been fenced in by a wire fence in the purpose of segregating the graveyard from the 220-acre farm, and to protect it against depredation of cattle running upon the surrounding land. All the heirs and the owner of the fee of the farm tract recognized the particular fenced plot of ground as segregating and constituting the McCutcheon Graveyard and assented to its being actually used as a repository of the dead. It had established and well-known boundaries on the ground marked out by the fence which inclosed it and contained room enough for double the number of the graves then in it, and for avenues and walks between the graves. It is believed the excepting clause should be deemed as covering the part fenced with the barbed wire fence, and not be deemed to cover the full square one-half acre. The area excepted would be the ground actually fenced and segregated by the barbed wire fence, and no more than that, as constituting the McCutcheon Graveyard, although that plot of ground so fenced was short of half an acre.

■ In determining the second point mentioned above, the established factual elements must be kept in view, that the McCutcheon Graveyard had long been dedicated or set aside and actually used exclusively as a private family burial ground, and had been segregated from the 220-acre farm by a fence surrounding it. The land of James McCutcheon, on which the burial ground was located and was being actually used as a repository of the dead, went by descent to his children and grandchildren. The grandchildren afterwards conveyed by deed their undivided interest in the land, without reservation of the graveyard, to W. E. Alexander, whose wife had inherited the remaining undivided portion of the land in virtue of being the daughter of James McCutcheon. At the time of his purchase, Mr. Alexander knew of the established graveyard and both he and his wife at all times recognized and assented to its use as a family burial ground. Mrs. Alexander was later buried there in the fenced plot. And when it happened in the years after purchase that Mr. Alexander, joined by his sons, conveyed the entire farm tract to Jones and Fuller, he entered in the deed, following the description of the 220-acre tract, the express provision, namely, "save and except about ½ acre of land, known as the McCutcheon Graveyard." The words "save" from and "except" out of have the force of meaning and plainly reflect the intention to exclude from the deed, and to be retained by the grantor, some part of the tract of land which has been specifically described as granted. The effect of this language used is to create, as we think, an exception, and the fee-simple title to the graveyard with the annexed right of use was held and reserved by W. E. Alexander. 14 Tex. Jur. p. 958, §§ 175–179; 19 C. J. p. 937, § 145; 18 C. J. §§ 339–344, p. 340; Johnson v. Elkhorn Gas Coal Mining Co., 176 Ky. 676, 197 S. W. 409. Mr. Alexander was not intending to be precluded from exercising his power of title and the right of the use in the burial ground. It follows as a consequence of the exception made in the deed that none of the subsequent grantors and lessors did or could legally pass fee-simple title or right of use to the appellants in the portion of the ground within the boundaries marked out by the barbed wire fence as constituting the McCutcheon Graveyard.

■ It is deemed fit to further conclude that Mr. Alexander intended by deed to Jones and Fuller to make the exception of the fee-simple title to the graveyard as a provision of the discharge of a duty due from James McCutcheon to the members of the family interred in the ground. In effect James McCutcheon who as owner dedicated and established the graveyard consented to abandon the use for any other purpose, unlimited as to time of duration. The fee-simple title of James McCutcheon passed to Mr. Alexander partly by purchase and partly by inheritance, subject to and burdened with the uses and purposes of a family burial ground, which was unlimited as to time of duration, to which it had been previously devoted by James McCutcheon. It appears to be the rule that, where property has been actually appropriated either as a pri-

vate family burying ground or as a public cemetery, it cannot in either instance be inherited or conveyed as other property is done so as to interfere with the use and purposes to which it has been devoted. Peterson v. Stolz (Tex. Civ. App.) 269 S. W. 113; Stewart v. Garrett, 119 Ga. 386, 46 S. E. 427, 64 L. R. A. 99, 100 Am. St. Rep. 179; Hines v. State, 126 Tenn. 1, 149 S. W. 1058, 1059, 42 L. R. A. (N. S.) 1138, and other cases. Quoting, as very aptly stated, from the Hines Case, supra: "When once dedicated to burial purposes, and interments have there been made, the then owner holds the title to some extent in trust for the benefit of those entitled to burial in it, and the heir at law, devisee, or vendee takes the property subject to this trust."

· The exception made in the deed by Alexander sufficiently indicates an intention on his part to reserve and hold the graveyard in trust by him for the purpose of beneficial interest and use therein of the descendants of those buried in the graveyard. The beneficial interest would not be alone in the surface of the ground, but below the surface of the ground where the graves are situated. He could not pass a leasehold estate or right in the graveyard lot inconsistent with, or intrusion upon, the right of use as a graveyard. As held in the companion case of Mary White v. Herbert Williams (Tex. Civ. App.) 57 S.W.(2d) 385, this day decided by this court by Associate Justice Sellers, the descendants of those buried in the graveyard have the equitable right to restrain inconsistent uses of the graveyard, as the drilling of an oil well on the burial ground.

It is concluded that the court did not err in refusing the injunction to appellants because the appellants have shown no estate or interest in the graveyard as bounded by the barbed wire fence and the appellees are threatening to drill an oil well "only within the original fenced portion of the graveyard."

The judgment is accordingly affirmed.