2005 VT 24

# In re Estate of Caleb Harding

[878 A.2d 201]

No. 03-156

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed February 18, 2005
Motion for Reargument Denied March 29, 2005

*Francis J. Thornton,* Charlotte, and *Joseph F. Obuchowski,* Burlington, for Plaintiff-Appellant.

*Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffrin,* Burlington, for Defendants-Appellees.

¶ 1. **Johnson, J.** This dispute involves the interpretation of deed language "[e]xcepting and reserving" a family burial plot from a land conveyance in 1837. Plaintiff is the original grantor's oldest living heir and is related, across the generations, to the person buried at the gravesite. Defendants own property that completely surrounds the disputed gravesite, and their chain of title includes the deed language referencing the burial plot. The Chittenden Probate Court concluded that a deed with language pertaining to a family burial plot does not retain a grantor's fee interest in the plot when there is (1) no description of its size or its metes and bounds and (2) no indication that the original grantor or his heirs ever recorded a separate deed for the burial plot. The probate court ultimately concluded that the language created an easement in the grantor's heirs for access to, and maintenance of, the grave. Plaintiff appeals. We affirm.

¶ 2. The probate court found the following facts that are not appealed by plaintiff. The Reverend Doran B. Harding, son of Caleb Harding and plaintiff's great-great-granduncle, died and was buried on Caleb Harding's farm in Charlotte. The following year, Caleb Harding sold his 114-acre farm to Williams Barton. The deed for this transaction contained the following provision whose meaning is disputed here: "Excepting and reserving therefrom the yard or enclosure on said land where Doran B. Harding was interred." The deed did not describe the burial plot's size or its boundaries. Other than the headstone, there is no delineation of the gravesite. There is no record of a separate deed for the gravesite or of any attempt to transfer it as a separate piece of property.

¶ 3. Defendants Jeffrey and Linda Hanson purchased adjoining two-acre parcels of the original Harding farm from the Willard family. Reverend Harding's headstone is located entirely within the boundaries of one of their parcels. After purchasing the property, defendants became concerned that the burial plot's presence could affect future resale value. They took preliminary steps to have the reverend's remains removed to a local cemetery. Pursuant to 18 V.S.A. § 5212, the funeral director that defendants had enlisted to coordinate the disinterment applied for a permit to relocate the reverend's resting place. The notice of the application that appeared in the local news-

paper caught the eye of Reverend and Caleb Harding's relatives and heirs.

¶ 4. Distraught over the potential disruption of Reverend Harding's eternal rest, plaintiff contacted defendants to assert her interest in the remains. After negotiations over disinterment broke down, plaintiff filed this suit under 18 V.S.A. § 5531(c) seeking, among other things, a declaration that Caleb Harding's heirs owned the burial plot in fee simple by virtue of the terms of the Harding-to-Barton deed that is part of defendants' title chain.[1] As Caleb Harding's oldest living relative, plaintiff brought the action on behalf of Caleb Harding's estate for the benefit of all his heirs.

¶ 5. In the absence of Vermont precedent on this exact issue, the probate court looked to decisions in other jurisdictions governing conveyances of land with family burial plots located on them. The probate court concluded, and the superior court agreed, that such a transaction gives rise to an easement benefitting the grantor and his heirs unless a contrary intention and circumstances consistent with the creation of a new fee interest in the burial plot are shown. The court concluded that defendants own the burial plot in fee simple subject to an easement held by plaintiff and Caleb Harding's other heirs. The easement entitles the heirs to ingress and egress upon defendants' property for the purpose of visiting and maintaining the gravesite.

¶ 6. Plaintiff appeals the probate and superior courts' orders, claiming that they erred in interpreting the deed language and concluding that plaintiff did not have a fee interest in the burial site. On appeal, our review of the courts' conclusions of law is plenary and nondeferential. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999). We agree with the courts' conclusions, and therefore affirm.

¶ 7. In resolving this appeal, the only evidence we have before us is two one-page deeds that are more than 160 years old. Plaintiff argues that fifteen words in one of those deeds carved out a small fee simple estate in the burial plot, although the deed does not delineate exact boundaries of that purported fee estate, if ever there were any. Plaintiff asserts that the deed language signified a legal exception from the 114-acre conveyance. Defendants counter that classifying the deed language as an exception rather than a reservation does not com-

---

[1] Plaintiff does not appeal the probate court's adverse decisions on the other claims she asserted.

pel the conclusion that plaintiff and her fellow heirs hold a fee simple estate consisting of the burial "yard or enclosure" that is completely surrounded by defendants' property. They argue that, by itself, the deed language at issue provides insufficient evidence upon which the Court could conclude that the parties to the original deed recognized a separate fee in the burial yard. Against the background of the common law, and in light of the conduct of the parties' predecessors in interest, defendants claim that the Harding heirs hold only an easement to access the gravesite and to maintain it in a traditional manner. We agree with defendants.

■ ¶ 8. In *Nelson v. Bacon*, we noted that the terms "reservation" and "exception" are often used synonymously in deeds. 113 Vt. 161, 169, 32 A.2d 140, 145 (1943). In this case, both terms are used conjunctively in the original deed. Therefore, the exception/reservation inquiry focuses not on the language used, but on the intention of the parties, the circumstances existing at the time the deed was executed, and the subject matter of the deed language at issue. *Id.*

■ ¶ 9. A deed exception takes something out of the conveyance that would otherwise pass, while a reservation creates some new right out of the thing granted. *Roberts v. Robertson*, 53 Vt. 690, 692 (1881). The property interest being excepted, however, will not always be a fee simple estate. Plaintiff cites numerous cases that construe disputed deed language as signifying exceptions to the deed conveyances. In many of these cases, however, the interest the grantor excepted was an easement. *Sargent v. Gagne*, 121 Vt. 1, 9-10, 147 A.2d 892, 898 (1958) (holding that deed language was intended as an exception for an easement appurtenant); *Nelson*, 113 Vt. at 169, 32 A.2d at 145 (same); *Haldiman v. Overton*, 95 Vt. 478, 481-82, 115 A. 699, 700-01 (1922) (recognizing that original grantor intended deed language concerning the use of a well and aqueduct as an exception of "an appurtenance to" the property he retained for his use and the use of his successors). One of these cases, *Haldiman*, presents an instructive point of comparison. In *Haldiman*, the original grantor subdivided a parcel he owned. A spring located on part of the land being conveyed supplied water to his dwelling that was located on part of the parcel he was retaining. We held that the deed language created an exception by which the grantor retained an easement in the spring because the spring, and the grantor's right to use it, were in existence at the time of the grant. *Haldiman*, 95 Vt. at 481, 115 A. at 700; accord *Nelson*, 113 Vt. at 170, 32 A.2d at 145 (distinguishing reservations that are used to create new

rights and exceptions that are used to withhold existing rights from a grant). In supporting her claim that the Harding-to-Barton deed contained an exception for the burial yard, plaintiff points out that the burial yard, like the well in *Haldiman*, was in existence at the time of the Harding-to-Barton grant. But as *Haldiman* illustrates, an exception for an existing interest may signify that an easement, not a fee, is being withheld from the grant.

¶ 10. An exception may give rise to an "easement in fee," which survives after the life of its holder expires, while a reservation without words of inheritance creates an easement that terminates upon the death of the reserving grantor. *Nelson*, 113 Vt. at 170, 32 A.2d at 145; *Smith's Ex'r v. Jones*, 86 Vt. 258, 260, 84 A. 866, 867 (1912). Accordingly, Caleb Harding's use of an exception to protect a burial easement would make sense here because it would ensure his heirs the future right to maintain his son's grave after he was no longer alive to do so himself. Thus, while we agree that the deed language at issue created an exception from the original grant, this conclusion does not help us determine whether the interest that plaintiff and her fellow heirs hold in the burial yard is an easement or a fee simple estate.

¶ 11. At common law, the establishment of a family burial plot created an easement against the fee.[2] See, e.g., *Aldridge v. Puckett*, 278 So. 2d 364, 366 (Ala. 1973); *Haas v. Gahlinger*, 248 S.W.2d 349, 351 (Ky. 1952); *Heiligman v. Chambers*, 338 P.2d 144, 148 (Okla. 1959). When the person who established the family cemetery conveys the land upon which it is located, the bare legal title to that portion will pass subject to the easement. *Aldridge*, 278 So. 2d at 366; *Heiligman*, 338 P.2d at 148. The easement benefits the person who established the burial plot, and it descends to the heirs. *Aldridge*, 278 So. 2d at 366. The rights created by the easement survive until either its originator

---

[2] Plaintiff cites *Goss v. Congdon*, 114 Vt. 155, 40 A.2d 429 (1945), as an example of a case where a grantor withheld a burial yard from a grant by means of an exception. The deed language at issue in *Goss* read as follows: "Excepting from the operation of this deed the following reservations and easements: Land sold by Lillie S. & Frederick G. Ritchie to Town of Wallingford, recorded in Book 21, page 422 — and Burying Ground just southwest of the dwelling. Also all growing timber, . . . ." *Id.* at 156, 40 A.2d at 429. *Goss* provides no guidance here because it concerned only the status of the timber rights mentioned in the cited passage; the interest retained in the "Burying Ground" was not addressed. *Id.* at 156-57, 40 A.2d at 429-30. Moreover, because the passage states that certain "easements" were excepted from the operation of the deed, it is possible that the "burying ground" reference concerned an easement and not a fee simple estate.

or the heirs abandon it. *Id*. Moreover, at common law, the interred's next-of-kin have the right to protect the grave by taking legal action against anyone, including the owner of the fee, who would knowingly and wantonly disturb the grave without right to do so. *Johnson v. Ky.-Va. Stone Co.*, 149 S.W.2d 496, 498 (Ky. 1941).

¶ 12. Though we cannot definitively discern from the evidence whether Caleb Harding intended to retain a burial easement or a fee simple estate, we can safely say that, at a minimum, Caleb Harding wanted to ensure that he and his heirs had access to his son's final resting place so they could visit and maintain it in the future. Nothing more than an easement was required to accomplish this purpose. By creating a common law burial easement, Caleb Harding would have ensured the sanctity of his son's grave until such time as he or his heirs abandoned it. Under such an easement, the heirs' rights would be those consistent with the use of the yard as a gravesite: ingress, egress, and the ability to maintain the area around the grave in a traditional manner. Ownership in fee, however, would not limit Harding or his heirs to using the site as a burial plot; as fee owners they could put the area to whatever lawful use they saw fit.

¶ 13. Defendants argue that plaintiff has not met her burden of proving that she and her fellow heirs own that part of defendants' land surrounding and including Doran Harding's grave because neither the deed, nor any of plaintiff's other evidence, indicates the proper boundary for the fee estate she claims. Specifically, there is no size description or metes and bounds indicated in the Harding-to-Barton deed. They argue that the parties to the original deed would have protected their respective interests by including a boundary description if they intended to withhold the burial yard as a separate fee. Plaintiff responds by asserting that the deed's vague description of the burial yard is typical of contemporaneous "country deeds of the time." On the record before us, the Court is not in a position to test the general validity of this assertion. Nonetheless, the record does contain the Barton-to-Pettibone deed pertaining to the same subject matter that was executed only one year after the Harding-to-Barton deed. It contains very specific descriptions of the larger property's boundaries, including measurements in rods. But it includes only a spare, general description of the burial yard, referencing it simply as the "enclosure where Dorin [sic] B. Harding is buried." Moreover, while the Harding-to-Barton deed does not contain metes and bounds describing the property being conveyed, it makes clear that a more "particular" description of the property is contained in other deeds within the title

chain. A general boundary description will ordinarily suffice when other deeds that can provide a more precise description of the property boundaries are incorporated by reference, but in this case there is no evidence that Caleb Harding recorded a separate deed for the burial plot. Thus, we cannot agree that the absence of a boundary description for the purported burial yard fee was consistent with prevailing deed practice in early nineteenth century Charlotte.

¶ 14. Plaintiff's stronger contention is that no metes and bounds description of the burial yard fee was necessary at the time the property was originally conveyed because the yard would have been clearly marked by a fence to protect the area from grazing cattle. This fence would have given grantor and grantee actual notice of the boundaries. The excepting clause in the Barton-to-Pettibone deed that references an "enclosure where Dorin [sic] B. Harding is buried" appears to support the claim that some sort of fence once surrounded the burial yard. The probate court findings indicate that no fence or delineation of the burial yard, other than the headstone, is apparent at the site now. Accordingly, there is no way to verify that boundary markers existed on the site in the past, much less what boundaries they demarcated.

¶ 15. Plaintiff further cites the excepting clause in the Barton-to-Pettibone deed as evidence demonstrating Barton's understanding that he could not pass title to the burial enclosure because he did not receive title to it from Harding. This evidence is, however, equivocal because the language could just as easily be a reference to a burial easement. An easement, like a fee, would have belonged to Caleb Harding and his heirs such that Barton would have had no power to transfer it to his grantee or to extinguish it for his grantee's benefit. Therefore, Barton might have inserted the language to provide notice of this encumbrance on the title.

¶ 16. Defendants argue that the subsequent actions of Caleb Harding and his heirs do not support plaintiff's claim that Harding retained a fee interest in the disputed site because the record contains no evidence that Caleb Harding or his heirs ever recorded a separate deed for the gravesite. Harding accepted several deeds when he acquired his fee interests in the individual lots that comprised his 114-acre parcel, and then executed a deed when he conveyed it away. It is therefore reasonable to expect that, subsequent to the grant to Barton, he would have executed a separate deed for the purported fee in the burial plot that had not previously stood alone as its own fee estate. Defendants also point out the absence of record evidence that Caleb

Harding or any of his heirs tried to transfer the fee interest from one generation to the next.

¶ 17. Plaintiff counters that no separate deed was required to accomplish Caleb Harding's purpose in retaining the burial yard in fee: ensuring that his son's gravesite remained in his family's possession. She argues that Harding would not have needed a deed to pass the property on to his other descendants and relatives because the burial yard fee would have passed with the rest of his estate at the time of his death, and this process would continue from one generation to the next. She has not, however, produced evidence showing that other Harding heirs who may have died testate included any reference to the separate fee in their wills. There is no other record evidence that any Harding heir has ever acted as if they owned the burial plot in fee.

¶ 18. After reviewing the evidence in this case, it is difficult for the Court to ascertain the true intent of the long-deceased parties to the original deed. In the absence of a clearer expression of intent in the original deed, we will determine the issue by referencing the common law of family gravesites mentioned above.

■ ¶ 19. Our review leads us to conclude that plaintiff did not carry her burden of proving, by a preponderance of the evidence, the existence of the purported fee in the burial yard. The evidence does indicate that her progenitor retained at least a common law burial easement by excepting the right to access and maintain the reverend's gravesite from the deed he gave to Williams Barton. The probate court reached the same conclusion and entered an order securing plaintiff and her fellow heirs the rights attendant to such an easement. The probate court rejected defendants' argument that any such easement has been abandoned. Defendants have not appealed this ruling. We conclude that, on this record, the probate court reached the correct result.

*Affirmed.*