2011 VT 58

# In re Petition of J. Michel Guite

[24 A.3d 1192]

No. 10-239

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Grearson, Supr. J., Specially Assigned

Opinion Filed June 10, 2011

*Robert D. Rachlin* and *Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Petitioner-Appellant.

*Jerome B. King*, Pro Se, Hanover, New Hampshire, Respondent-Appellee.

¶ 1. **Dooley, J.** This case concerns the use of a hilltop cemetery on a farm in Hartland, Vermont. The petitioner, J. Michel Guite, now owns the farm property. He claims that the cemetery plot is owned by heirs of the Aldrich family, who settled the property as a farm in approximately 1775 and remained there until selling the farm in 1853. Respondent's family purchased the farm property in 1950 and owned it until 1983. Prior to selling the property, respondent, Jerome King, buried the cremated remains of his parents in the hilltop cemetery. Respondent claims that the Aldrich family reserved only an easement in the cemetery plot. Thus, he contends title to the plot remained with the farm so that he could use it to bury his parents and the remains cannot be moved. The trial court adopted respondent's theory and denied the petition. We conclude that petitioner's theory is correct and reverse.

¶ 2. The material facts are not in dispute. During their ownership and use of the Hartland farm from approximately 1775 until 1853, the Aldrich family and its descendants buried at least three family members in the hilltop cemetery. When Aldrich family descendants Jude and Rebecca Adams sold the entire farm property in 1853, the deed included the following language: "We . . . do freely give grant sell convey and confirm . . . a certain

piece of land lying and being in Hartland . . . . Possession to be given the first day of April 1854. *Excepting out of the above described premises* 41 feet of ground by 27 feet which is the burying ground on said premises." (Emphasis added.) The record contains no evidence that the Adamses or their heirs recorded a separate deed to the cemetery plot, nor any evidence that the family ever paid property taxes on the plot. The cemetery exception that began with the 1853 deed was included in all subsequent deeds transferring the farm property.

¶ 3. In 1950, respondent's parents purchased the farm and lived there for about thirty years. In 1981, after his parents passed away, respondent buried both of their cremated remains in the cemetery. When respondent carried out this burial, he neglected to obtain any burial permits from the town. He did not seek permission to use the hilltop cemetery from any remaining Aldrich family descendants. In 1983, respondent sold the entire Hartland farm property on behalf of his family's trust. Respondent included the following language pertaining to the cemetery plot in the 1983 deed:

> The reservation in fee of the cemetery "41 feet of ground by 27 feet which is the burying ground on said premises" appears at Volume 16, Page 240 of the Hartland Land Records. It is the mutual wish of the Grantors and the Grantee that the burial ground be maintained; by acceptance of this deed the Grantee for herself and her heirs and assigns agrees to keep the burial ground in a neat and orderly condition permitting such reasonable access to the cemetery as may be desired by the Grantors and their successors and assigns . . . .

¶ 4. Following the 1983 sale, the farm passed through several different owners before petitioner purchased it in September 2008. Petitioner was aware of the cemetery and its location when he bought the property. His deed stated that "The lands and premises are conveyed subject to: (1) the reservation of the 'Aldrich Cemetery,' so-called, as set forth in the Warranty Deed . . . dated December 26, 1853 . . . . Also conveying with quit claim covenants only any interest in and easements or rights of way to the aforesaid 'Aldrich Cemetery.' "

¶ 5. Petitioner petitioned for a declaratory judgment regarding rights asserted by respondent in the hilltop cemetery. He re-

quested a judgment authorizing removal of the cemetery from its current location, allowing the cemetery plot to "revert to private farm property." Petitioner now challenges a summary judgment decision from the trial court, which concluded that descendants of respondent's parents are the beneficiaries of both an implied easement in the hilltop cemetery from the 1853 deed and a recorded easement from the 1983 deed that places subsequent owners of the farm on notice of their obligation to "keep the burial ground in a neat and orderly condition permitting such reasonable access to the cemetery as may be desired by [respondent's family]." (Quotation marks omitted.)

¶ 6. The trial court relied primarily on our decision in *In re Estate of Harding*, 2005 VT 24, 178 Vt. 139, 878 A.2d 201. In *Harding*, we held that a deed that reserved and excepted a burial plot from a conveyance of property created only an easement that would protect the plot and allow heirs to visit it. *Id.* ¶ 19. Here, the trial court held that the Aldrich heirs had only an easement and respondent had title to the cemetery plot when he owned the surrounding property. As a result, the court concluded respondent had a right to bury the cremated remains of his parents in the cemetery plot. The trial court held that petitioner, as a subsequent purchaser of the farm, took the whole property "subject to the easements that were established before him," and the court ultimately granted respondent's motion for summary judgment and denied petitioner's cross-motion for summary judgment. This appeal followed.

■ ¶ 7. Petitioner argues on appeal that the trial court erred for ten reasons, the first of which decides this case: under the terms of the 1853 deed, the grantors retained a fee simple interest in the cemetery plot so that respondent had no interest in that plot. On this basis, petitioner argues that the trial court erred in holding to the contrary. There is no dispute about the logic of this argument — that is, fee simple ownership of the cemetery plot by the Aldrich family would prevent ownership by respondent on which his defense is based. Respondent's family could not have retained any easements, express or implied, because one may reserve only property rights that one holds at the time of a conveyance. See *Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 205, 762 A.2d 1219, 1223 (2000); *Okemo Mountain, Inc. v. Town of Ludlow Zoning Bd. of Adjustment*, 164 Vt. 447, 451, 671 A.2d 1263, 1267 (1995); see also *Boudreau v.*

*Coleman,* 564 N.E.2d 1, 6 (Mass. App. Ct. 1990) ("Only rights held by grantors at the time of the conveyance may be expressly reserved in a deed."). Thus, the first issue requires us to determine the effect of the 1853 deed. If the deed retained in the grantors the cemetery plot in fee simple, as petitioner argues, then respondent had no right in the cemetery plot. If the 1853 deed created only an easement in the Aldrich heirs, then respondent owned the cemetery land subject to the easement of the heirs, and petitioner cannot prevail on this point.

¶ 8. In an appeal from a summary judgment decision, this Court reviews the motion for summary judgment de novo, applying the same standard of review as the trial court. *Madowitz v. Woods at Killington Owners' Ass'n,* 2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117. We will affirm summary judgment when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Id.*; see V.R.C.P. 56(c)(3). On review, we afford the nonmoving party the benefit of all reasonable doubts and inferences. *Ianelli v. U.S. Bank,* 2010 VT 34, ¶ 7, 187 Vt. 644, 996 A.2d 722 (mem.) (quotation omitted).

■ ¶ 9. In addressing whether the grantor retained a burial easement or a fee interest, we must consider the 1853 deed as a whole and attempt to ascertain the intent of the parties when they used the language in question. *Kipp v. Chips Estate,* 169 Vt. 102, 105, 732 A.2d 127, 129 (1999). " 'Our master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement.' " *Kennedy v. Rutter,* 110 Vt. 332, 338, 6 A.2d 17, 20 (1939) (quoting *Vermont Kaolin Corp. v. Lyons,* 101 Vt. 367, 376, 143 A. 639, 642 (1928)); see P. Jackson, The Law of Cadavers 219 (1936) (distinguishing "exception" from "reservation" and noting that "the scrivener's choice of terms is given appropriate but not conclusive weight"). These general principles apply here.

¶ 10. As we stated above, the trial court relied heavily on our decision in *Harding* in reaching its decision that the 1853 deed did not leave the grantors with a fee simple interest in the cemetery plot. In *Harding,* the plaintiff's great-great-granduncle, the Reverend Doran B. Harding, died and was buried on Caleb Harding's farm in Charlotte. The following year, Caleb Harding sold the farm, and the deed for this transaction included the following

provision, whose meaning was at issue in the case: "Excepting and reserving therefrom the yard or enclosure on said land where Doran B. Harding was interred." *Harding*, 2005 VT 24, ¶ 2 (quotation marks omitted). Based on this provision, the plaintiff sought a declaration that Caleb Harding's heirs owned the burial plot in fee simple. The probate and superior courts concluded that the deed language gave rise not to a fee interest in the plot, but rather to an easement benefitting the grantor and his heirs, and we affirmed. *Id.* ¶¶ 1, 5.

¶ 11. The only evidence we had before us in *Harding* was two one-page deeds that were more than 160 years old. *Id.* ¶ 7. The defendants argued that, by itself, the deed language at issue provided insufficient evidence upon which to conclude that the parties to the original deed recognized a separate fee in the burial yard, and we agreed. *Id.* We noted that at common law the establishment of a family burial plot created an easement against the fee. *Id.* ¶ 11. We considered a number of factors to determine whether the facts indicated a clear intent to create a fee interest as opposed to an easement. These factors included the historic use of the terms "reservation" and "exception," the quality of the deed's boundary description of the plot, and whether a separate deed existed for the plot. *Id.* ¶¶ 9-10, 13, 16. We ultimately concluded that the plaintiff had failed to prove the existence of the purported fee. *Id.* ¶ 19. In the absence of a clear expression of intent to create a fee, we based our holding on the common law rule of family gravesites, which indicated that an easement had been created. *Id.* ¶ 18.

¶ 12. We conclude that this is a significantly different case from *Harding*. The main difference is in the nature of the interest retained as expressed in the deed. In *Harding*, the property involved was the "yard or enclosure on said land where Doran B. Harding was interred." 2005 VT 24, ¶ 2 (quotation marks omitted). We noted that this description included no specification of the burial plot's size or boundaries. *Id.* There was no delineation of the gravesite except the presence of a headstone. *Id.* Here, the description of the interest retained specifies the area as a plot of "41 feet of ground by 27 feet." In *Harding*, the interest retained was in the "yard or enclosure *on said land.*" *Id.* (emphasis added). Here, the interest is in the "ground." In *Harding*, the interest was in the graveyard or enclosure. *Id.* Here, the interest is in the described plot, "which is the burying ground." Each of

these differences is an indication that the deed in this case has excepted from the conveyance a fee interest in a particular plot of land, rather than a burial easement as recognized at common law.

¶ 13. The language of the interest retention in this case supports this construction. The plot is excepted "out of the above described premises." The terms "excepting" and "exception" are generally used to withhold from a grant or conveyance something that would otherwise pass in the grant. See *Harding*, 2005 VT 24, ¶ 9 ("A deed exception takes something out of the conveyance that would otherwise pass"); see also *Sheldon Slate Prods. Co. v. Kurjiaka*, 124 Vt. 261, 267, 204 A.2d 99, 103 (1964) ("[A] reservation is some newly created right which the grantee impliedly conveys to the grantor, while an exception is something withheld from a grant which would otherwise pass as a part of it."). This technical meaning of the words "excepting" and "exception" dates back to the era of the 1853 deed. See, e.g., *Roberts v. Robertson*, 53 Vt. 690, 692 (1881) ("The office of an *exception* in a deed is to take something out of the thing granted that would otherwise pass, while a *reservation* creates in favor of the grantor some *new right* out of the thing granted which was not before *in esse*."); *Keeler v. Wood*, 30 Vt. 242, 245-46 (1858) ("[T]he word 'reserving,' strictly and technically used, would imply a reservation of some use, or lesser estate, out of the estate granted, while the words 'excepting' or 'saving' imply an exception out of the conveyance of a part or parcel of the very thing granted, and are appropriate to describe the exclusion of the land itself from the operation of the deed."). As this Court has previously recognized, the drafters of deeds have sometimes used the terms "reserving" and "excepting" synonymously. *Roberts*, 53 Vt. at 692; *Keeler*, 30 Vt. at 246; see also *Harding*, 2005 VT 24, ¶ 8. Where it is possible that the terms were being treated as synonyms in a deed, the Court must interpret the terms within the context of the surrounding language "in a way to effectuate the intent of the parties." *Roberts*, 53 Vt. at 692. Thus, for example, "words creating an exception are to have effect as such, although the word reservation is employed." *Id.* In *Harding*, the interest was both excepted and reserved, suggesting that it was something other than a fee interest. 2005 VT 24, ¶ 10. We recognize that *Harding* held that categorizing an interest as having been created by an exception, rather than a reservation, is not necessarily inconsistent with the conclusion that the interest involved is an easement rather than

title in fee simple. *Id.* ¶¶ 9-10. In this case, however, the deed language creating an exception, combined with the description of the property as discussed above, points to fee simple title.

¶ 14. In addition to the above analysis, we have looked at cases from other jurisdictions. Only a few appear to be helpful, and, not surprisingly, they are quite dated. The closest to this case is *Mannerback v. Pennsylvania R.R.*, 16 Pa. Super. 622, 1901 WL 3656 (Pa. Super. 1901), where the deed reserved and excepted "the graveyard on the lands hereby conveyed." *Id.* at *2 (quotation marks omitted). In holding that a fee interest in the graveyard land had been excepted, the court reasoned:

> The deed . . . described a tract of land which included the graveyard. That which was withheld from the grantee, by the clause quoted, was a part of the tract conveyed. It was a piece of the land, described by the use to which it was then put. A "graveyard" is impossible of definition, if reference to the fact that it is a piece or parcel of land be denied.

*Id.* at *3. In another, *Houston Oil Co. of Texas v. Williams*, 57 S.W.2d 380 (Tex. Civ. App. 1933), the deed in issue conveyed a tract of land but added, "Save and except about ½ acre of land in the south end of this tract, known as the McCutcheon Graveyard." *Id.* at 383 (quotation marks omitted). The court noted that the deed described property "in terms sufficiently explicit to enable it to be identified," noting that the identification of the land as the McCutcheon Graveyard was used to identify the location of the "about ½ acre of land." *Id.* at 383-84 (quotation marks omitted). It found that the words "save" and "except" in that context meant that the grantor had retained the "about ½ acre of land" in fee simple. *Id.* at 384 (quotation marks omitted).

¶ 15. The deed in this case has the attributes of those in *Mannerback* and *Williams,* specifically that the grantor retained an ascertainable tract of land, with the burial plot description being used to locate where the tract is to be found. As the court stated in *Mannerback*, "[i]t was a piece of the land, described by the use to which it was then put." 16 Pa. Super. 622, 1901 WL 3656, at *3. For that reason primarily, we conclude that the deed excepted from the conveyance the burial ground, which remained with the grantor in fee simple.

¶ 16. The trial court relied upon two factors in reaching the opposite conclusion — that the grantor never created a separate deed to the cemetery lot, and that there was no evidence that the grantor continued to pay property taxes on the lot. The first factor is discussed in *Harding*, 2005 VT 24, ¶ 13, but in a specific context. In that case, there was no description of the size or metes and bounds of the burial yard, but the Court noted that a fee interest could still be found "when other deeds that can provide a more precise description of the property boundaries are incorporated by reference, but in this case there is no evidence that Caleb Harding recorded a separate deed for the burial plot." *Id.* Here, the need for a separate deed is much less clear — the size and location descriptions of the burying ground were apparently sufficient to determine the property boundaries. Thus, a separate deed is not necessary for a fee simple interest.

¶ 17. The second factor is of lesser significance. There is no evidence that the grantor of the 120 acres ever paid property taxes on the burying ground or that the grantee ever paid property taxes on the full 120 acres as if the exception had not occurred. It may be that the property taxes on a 41' by 27' plot, containing graves, would be de minimis. In any event, the significance of these facts, if they could be determined, is limited to a relatively short period between 1853 and 1876. In the latter year, the Legislature exempted "[a]ll lands used for cemetery purposes" from property taxes. See 1876, No. 90, § 1. They have been continuously exempt since 1876. See 32 V.S.A. § 3802(7). The absence of evidence on taxation does not change our conclusion.

¶ 18. Respondent makes an additional argument why no fee interest was retained. He argues that if one begins reading the 1853 deed from the words "meaning to convey all the land we now own in Hartland," it becomes clear that "[e]xcepting out of the above described premises" was not meant to qualify "all the land we now own." Rather, respondent argues that the "[e]xcepting out" language was meant to qualify the immediately preceding sentence, "Possession to be given the first day of April 1854." He interprets this qualification to mean that possession of the burial plot was excepted out of the property by the Aldrich descendants such that no subsequent owners of the farm could "possess" it and subsequent generations could merely use the plot for its purpose as a cemetery. The arrangement of these sentences does not change our interpretation of the "[e]xcepting out" phrase. By the

language, the exception is from the "premises" conveyed, not from the possession passed. In fact, respondent's interpretation of the "possession" language supports the conclusion that the grantors in the 1853 deed retained fee simple ownership in the plot because they did not intend to give possession of it to the grantees. As *Harding* holds, the alternative interest is an easement as recognized at common law, not some right of possession. See 2005 VT 24, ¶¶ 9, 12. Nothing in the deed indicates, as respondent seems to contend, that the grantors intended to create a piece of property "possessed" by no one and open for use as a burial plot to anyone who owned the surrounding farm. We would need to distort the language of the deed to find such an intent.

¶ 19. In *Harding,* we ruled that where we could not ascertain the true intent of the parties to the original deed, and in the absence of a "clearer expression of intent," we would rely only upon the common law of family gravesites, which creates an easement. 2005 VT 24, ¶ 18. The deed in this case contains the necessary clearer expression of intent. Accordingly, we find that the 1853 deed excepted from its grant the 41' by 27' burial plot, and the plot is owned in fee simple by the heirs of the Aldrich family. Thus, it was never owned by the King family, and they had no right to bury the cremated remains in it.

¶ 20. Because we hold in favor of petitioner and reverse the trial court on the basis of the issues discussed above, we decline to reach petitioner's additional arguments.

*Reversed and remanded for further proceedings consistent with this opinion.*